## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MIKE FINNIGAN, KENNETH BUCHBINDER, BRIAN McCARTNEY, TYRONE VILLACIS, LUIS PICHARDO, and KRISTIN SERKOWSKI, *individually and on behalf of all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> CANON U.S.A., INC., <br><br> Defendant. | Case No. _____ <br><br><br> **CLASS ACTION COMPLAINT** <br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Mike Finnigan, Kenneth Buchbinder, Brian McCartney, Tyrone Villacis, Luis Pichardo, and Kristin Serkowski (hereinafter, "Plaintiffs"), individually and on behalf of all other persons similarly situated (the "Class" or "Class members"), by their undersigned attorneys, bring this Class Action Complaint against Canon U.S.A., Inc. (hereinafter "Canon" or "Defendant"), and allege the following based upon personal knowledge as to themselves and their own actions, and, as to all other matters, allege, upon information and belief and investigation of their counsel.

## NATURE OF THE ACTION

1.      This class action arises out of the recent targeted ransomware attack and resulting data breach ("Data Breach") at Canon, a leader in the field of providing consumer, industrial, and business-to-business imaging solutions. The ransomware attack disrupted operations by causing a shutdown of multiple applications used by Defendant and blocked access to confidential data stored on Defendant's network and computer systems ("Ransomware Attack"). Due to

1

Defendant's failure to safeguard confidential information, thousands of current and former Canon employees and their beneficiaries have had their confidential information stolen.

2.      As a result of the Ransomware Attack, Plaintiffs and Class Members suffered ascertainable losses in the form of loss of the value of their private and confidential information, out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

3.      In addition, Plaintiffs' and Class Members' sensitive personal information—which was entrusted to Canon—was compromised and unlawfully accessed due to the Ransomware Attack.

4.      The confidential information stolen includes Personal Financial Information ("PFI") such as bank account numbers and routing numbers, and Personally Identifiable Information ("PII") such as Social Security Numbers, driver's license numbers, government-issued identification numbers, electronic signatures, and dates of birth (collectively, "Private Information" or "PI").

5.      Canon employs over 185,000 people worldwide and collects significant data on its current and former employees, and their beneficiaries. This data often includes sensitive personal information obtained in the context of an employment relationship, such as Social Security numbers, addresses, driver's license numbers, bank information, passport numbers, dates of birth, and medical child support orders.

6.      On November 25, 2020, Defendant announced that it became aware of a ransomware attack on its network and systems on August 4, 2020. Defendant stated that the Ransomware Attack resulted in unauthorized access to files on its servers containing personal and confidential information about current and former employees, as well as their beneficiaries and

dependents. Defendant further revealed that the exposure and unauthorized access occurred between July 20, 2020 and August 6, 2020.

7.    Plaintiffs bring this class action lawsuit on behalf of those similarly situated to address Defendant's inadequate safeguarding of Class Members' Private Information that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiffs and Class Members that their information had been subject to the unauthorized access and precisely what specific type of information was accessed.

8.    Defendant maintained the Private Information in a reckless manner.

9.    Upon information and belief, the potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to Defendant, and thus Defendant was on notice that failing to take steps necessary to secure the Private Information from those risks left that property in a dangerous condition.

10.    In addition, Defendant and its employees failed to properly monitor the computer network and systems that housed the Private Information.  Had Defendant properly monitored its property, it would have discovered the Ransomware Attack and breach sooner.

11.    Despite the fact that the threat of a data breach had been a well-known risk to Defendant, especially due to the valuable and sensitive nature of the data Defendant collects, stores and maintains, Defendant failed to take reasonable steps to adequately protect the PI of current and former Canon employees and their beneficiaries and dependents.

12.    The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect PI.

13.    As a result of Defendant's failure to take reasonable steps to adequately protect the ultra-sensitive PI of current and former Canon employees and their beneficiaries, Plaintiffs' and

Class members' PI is now in the hands of cyber-thieves. which can now be sold on the Dark Web and to commit identity theft and fraud for the foreseeable future.

14.     The highly confidential PI that was compromised in the Ransomware Attack and Data Breach is considered a valuable treasure trove that can be sold on the Dark Web and/or used to commit identity theft or other fraud for the foreseeable future.

15.     Armed with the Private Information accessed in the Ransomware Attack, data thieves can commit a variety of crimes including, e.g., opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' information to obtain government benefits (such as filing for unemployment benefits), filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

16.     As a result of the Ransomware Attack, Plaintiffs and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft.  Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

17.     Plaintiffs and Class Members may also incur out of pocket costs for, *e.g*., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

18.     Defendant's failure to implement and follow proper security procedures has resulted in ongoing harm to Plaintiffs and Class Members who will continue to experience a lack of data security for the indefinite future and remain at serious risk of identity theft and fraud that would result in significant monetary loss.

19.     Plaintiffs seek to remedy these harms on behalf of themselves and all similarly

situated individuals whose Private Information was accessed during the Data Breach.

20.     Plaintiffs seek to recover damages and other relief resulting from the Ransomware Attack, including but not limited to, compensatory damages, reimbursement of out-of-pocket costs that Plaintiffs and others similarly situated will be forced to bear, and declaratory judgment and injunctive relief, such as improvements to Defendant's data security system, future annual audits, and adequate credit monitoring services funded by Defendant; to mitigate future harms that are certain to occur in light of the scope of this breach.

21.     Accordingly, Plaintiffs bring this action against Defendant seeking redress for its unlawful conduct asserting claims for violation of the negligence and negligence *per se*, an intrusion upon seclusion, breach of an express and implied contract, breach of fiduciary duty, a breach of New York Business Law § 349 and other state consumer protection statutes.

## PARTIES

### A.  Plaintiff Michael Finnigan

22.     Plaintiff Michael Finnigan is a citizen and resident of the State of Ohio, residing at 126 South 2nd Street, Apartment 2113, Loveland, Ohio 45140.

23.     Plaintiff Finnigan was notified by Defendant that his PI was accessed without authorization via a Letter of Notice dated November 24, 2020, a copy of which is attached hereto as Exhibit A.

24.     Since the Data Breach occurred in August 2020, Plaintiff Finnigan has experienced a substantial increase in scam emails, which appeared to be placed with the intent to obtain personal information to commit identity theft by way of a social engineering attack.

### B.  Plaintiff Kenneth Buchbinder

25.     Plaintiff Kenneth Buchbinder is a citizen and resident of the State of New York, residing at 1 Cabernet Court, Huntington, New York 11743.

26.    Plaintiff Buchbinder was notified by Defendant that his PI was accessed without authorization via a Letter of Notice dated November 24, 2020, a copy of which is attached hereto as Exhibit B.

27.    Since the Data Breach occurred in August 2020, Plaintiff Buchbinder has experienced a substantial increase in scam phone calls, which appeared to be placed with the intent to obtain personal information to commit identity theft by way of a social engineering attack.

**C.  Plaintiff Brian McCartney**

28.    Plaintiff Brian McCartney is a citizen and resident of the State of New York, residing at 24 Sunset Avenue, Hicksville, New York 11801.

29.    Plaintiff McCartney was notified by Defendant that his PI was accessed without authorization via a Letter of Notice dated November 24, 2020, a copy of which is attached hereto as Exhibit C.

30.    Since the Data Breach occurred in August 2020, Plaintiff McCartney has experienced a substantial increase in scam phone calls, which appeared to be placed with the intent to obtain personal information to commit identity theft by way of a social engineering attack.

**D.  Plaintiff Tyrone Villacis**

31.    Plaintiff Tyrone Villacis is a citizen and resident of the State of Florida, residing 3312 Russett Place, Land O' Lakes, Florida 34638.

32.    Plaintiff Villacis was notified by Defendant that his PI was accessed without authorization via a Letter of Notice dated November 24, 2020, a copy of which is attached hereto as Exhibit D.

33.    Since the Data Breach occurred in August 2020, Plaintiff Villacis has experienced a substantial increase in scam phone calls and emails, which appeared to be placed with the intent

to obtain personal information to commit identity theft by way of a social engineering attack.

**E.  Plaintiff Luis Pichardo**

34.     Plaintiff Luis Pichardo is a citizen and resident of the State of Florida, residing at 12926 SW 50th Street, Miramar, Florida 33027.

35.     Plaintiff Pichardo was notified by Defendant that his PI was accessed without authorization via a Letter of Notice dated November 24, 2020, a copy of which is attached hereto as Exhibit E.

36.     Since the Data Breach occurred in August 2020, Plaintiff Pichardo has experienced a substantial increase in scam phone calls, which appeared to be placed with the intent to obtain personal information to commit identity theft by way of a social engineering attack.

**F.  Plaintiff Kristin Serkowski**

37.     Plaintiff Kristin Serkowski is a citizen and resident of the State of Illinois, residing at 231 Rouse Avenue, Mundelein, IL 60060.

38.     Plaintiff Serkowski was notified by Defendant that her PI was accessed without authorization via a Letter of Notice dated November 24, 2020, a copy of which is attached hereto as Exhibit F.

39.     Since the Data Breach occurred in August 2020, Plaintiff Serkowski has experienced a substantial increase in scam phone calls and emails, which appeared to be placed with the intent to obtain personal information to commit identity theft by way of a social engineering attack.  She obtained a "Robocaller" that is supposed to stop scam phone calls but they continue to get through.

**G.     Defendant Canon U.S.A, Inc.**

40.     Defendant Canon U.S.A., Inc. is a New York corporation with its principal place of business located at One Canon Park, Melville, New York 12207.

7

## JURISDICTION AND VENUE

41.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; and minimal diversity exists because at least one Plaintiff and the Defendant are citizens of different states.

42.    This Court has personal jurisdiction over Defendant as it is incorporated in this State.  Additionally, Canon conducts substantial business in this State and in this District and/or the conduct complained of occurred in and/or emanated from this State and District because the confidential information compromised in Data Breach was likely stored and/or maintained in accordance with practices emanating from this District.

43.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the conduct alleged in this Complaint occurred in, were directed to, and/or emanated from this District. Venue is additionally proper because Defendant has its principal place of business in this District.

## FACTUAL ALLEGATIONS

### *Defendant's Business*

44.    Canon is a high-tech company that is a leading provider of "consumer, business-to-business, and industrial digital imaging solutions" across the globe.[1] Defendant claims, "Canon U.S.A., Inc. has been a leader in product development in the Americas" and that it is a leader in innovation in many different industries.[2]

---

[1] *Corporate Profile*, Canon, https://www.usa.canon.com/internet/portal/us/home/about/about-canon/corporate-profile/ (last visited Dec. 17, 2020).
[2] *See Sixty Years of Canon in the Americas*, Canon, https://www.usa.canon.com/internet/portal/us/home/about/about-canon/canon-history/canon-history-2010 (last visited Dec. 17, 2020).

45.    Canon employs a large number of individuals, both internationally and in the United States.  As of May 2020, Canon employed approximately 185,000 people worldwide,[3] with approximately 18,000 employed in the United States.[4]

46.    Of the nearly $33 billion in global revenue that Canon made in 2019, approximately $9.3 billion, or 28.6%, of that revenue was from the United States.[5]

47.    To attract talent and remain competitive in the various industries in which it operates, Canon touts both its compensation and benefits, including benefits for former employees. Canon's website states, "Canon understands the challenges of balancing the demands of your career and personal life, which is why we have selected some of the most reputable, well-respected service providers in the country. These relationships enable us to offer our employees a comprehensive benefits package. We take great pride in being a global business leader that values its employees."[6] Canon notes that it provides employees: disability coverage; medical, dental, and vision plans; and retirement savings and matching, among other benefits.[7]

48.    On information and belief, as a condition of employment, Canon collects and maintains personal and financial information about its employees. Also, Canon obtains Personal Information and employment data within the context of a person's working relationship with Canon. Such persons include, for example, job applicants, employees (whether temporary or permanent), contingent workers, retirees, and former employees, as well as any dependents or beneficiaries.

---

[3] *Canon*, Forbes, https://www.forbes.com/companies/canon/?sh=25195c505427 (last visited Dec. 17, 2020).
[4] *See Data Summary – Number of Canon Group Employees*, Canon, https://global.canon/en/csr/people-and-society/labor/data.html (last visited Dec. 17, 2020).
[5] See Canon Group 10-Year Summary, Canon Fact Book 2020-2021, Canon, https://global.canon/en/corporate/pdf/pdf/canon-fact-book-2020-2021-3q-e.pdf (last visited Dec. 17, 2020).
[6] *See Careers – Compensation and Benefits*, Canon, https://www.usa.canon.com/internet/portal/us/home/about/careers/benefits-compensation/ (last visited Dec. 17, 2020).
[7] *Id.*

### The Ransomware Attack and Data Breach

49.    On August 4, 2020, Defendant experienced a data security incident that prevented employees from accessing computer applications and network data and caused users to lose files.[8]

50.    According to Defendant, the company's computer applications and network data was the subject of a targeted ransomware attack which prevented employees from accessing computer systems and resulted in unauthorized access to confidential files.

51.    A ransomware attack deploys a type of malicious software that blocks access to a computer system or data, usually by encrypting it, until the target pays a fee to the attacker.[9]

52.    Upon discovering this incident, Defendant launched an investigation and engaged a cybersecurity firm to address the incident, restore operations, and to determine whether Personal Information may have been accessed.

53.    On November 2, 2020, the investigation determined that there was unauthorized activity on Defendant's network between July 20, 2020 and August 6, 2020 and that during that time there was unauthorized access to confidential information about current and former employees from 2005 to 2020.

54.    The confidential information that was accessed without authorization included current and former employees names, dates of birth, Social Security numbers, driver's license numbers or government-issued identification numbers, electronic signatures, and financial account information provided to Canon for direct deposit.

55.    On information and belief, the Private Information was not encrypted.

---

[8] *See* Ionut Ilascu, *Canon Publicly Confirms August Ransomware Attack, Data Theft*, Bleeping Computer (Nov. 26, 2020), https://www.bleepingcomputer.com/news/security/canon-publicly-confirms-august-ransomware-attack-data-theft/ (last visited Dec. 17, 2020).
[9] *See What is Ransomware?*, ProofPoint, https://www.proofpoint.com/us/threat-reference/ransomware (last visited Dec. 17, 2020).

56.     The cyberattack was reported to law enforcement.

57.     Upon information and belief, the cyberattack was targeted at Defendant due to its status as a leading technology company that collects employment data on its many thousands of employees.

58.     Upon information and belief, the targeted cyberattack was expressly designed to gain access to private and confidential data, including (among other things) the Private Information of the Plaintiffs and the Class Members.

59.     Defendant notified Plaintiffs that their Private Information was stolen in the Data Breach.  Plaintiffs further believe that their stolen Private Information was subsequently sold on the Dark Web.

60.     Upon informing current and former employees that their PI was accessed without authorization, Defendant offered those impacted individuals a complimentary membership to credit and identity monitoring services through Experian.[10]

61.     The offer of credit and identity monitoring services is an acknowledgment by Defendant that the impacted current and former employees, and their beneficiaries and dependents, are subject to an imminent threat of identity theft and financial fraud.

62.     Despite acknowledging that data thieves accessed Plaintiffs' and the Class Members' Private Information, Defendant did not begin to notify affected current and former employees until November 25, 2020.

63.     Defendant had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

---

[10] *See Notice of Data Security Incident*, Canon (Nov. 25, 2020), https://www.usa.canon.com/internet/portal/us/home/explore/securityincident (last visited Dec. 18, 2020).

64.    Plaintiffs and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations and representations to keep such information confidential and secure from unauthorized access.

65.    Defendant failed to uphold its obligations to Plaintiffs and Members of the Class. As a result, Plaintiffs and Class Members have been significantly harmed and will be at a high risk of identity theft and financial fraud for many years to come.

### The Ransomware Attack and Data Breach were Foreseeable Risks of which Defendant was on Notice

66.    The threat of hackers gaining access to information that businesses store is serious and well-known. Government authorities have been advising that companies take precautions to prevent these hacks for years.

67.    Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation and U.S. Secret Service have issued warnings to potential targets so they are aware of, and prepared for, a potential attack.

68.    Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches preceding the date of the breach.

69.    In light of recent high profile data breaches at other large companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that its electronic records would be targeted by

cybercriminals.[11]

70.     Therefore, the recent increase in such attacks, and attendant risk of future attacks, was widely known to the public and the Defendant.

### *Defendant, At All Relevant Times, Had a Duty to Plaintiffs and Class Members to Properly Secure their PI*

71.     Defendant, at all relevant times, had a duty to Plaintiffs and Class Members to properly secure their PI, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiffs and Class Members, and to promptly notify Plaintiffs and Class Members when Defendant became aware of the potential that its current and former employees' PI, and their beneficiaries' and dependents PI, may have been compromised.

72.     Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant, on the one hand, and Plaintiffs and the Class Members, on the other hand. The special relationship arose because Plaintiffs and the Members of the Class entrusted Canon with their PI as part of receiving compensation and/or benefits from Cannon.

73.     Defendant had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Defendant breached its common law, statutory, and other duties owed to Plaintiffs and Class Members.

74.     Defendant's duty to use reasonable security measures also arose under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or

---

[11] See Maria Henriquez, The Top 10 Data Breaches of 2020, Security Magazine (Dec. 3, 2020), https://www.securitymagazine.com/articles/94076-the-top-10-data-breaches-of-2020 (last visited Dec. 18, 2020).

affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data by entities like Defendant.

75.     The Federal Trade Commission (FTC) has established data security principles and practices for businesses as set forth in its publication, Protecting Personal Information: A Guide for Business.

76.     Among other things, the FTC states that companies should encrypt information stored on computer networks and dispose of consumer information that is no longer needed.[12]

77.     The FTC also says to implement policies for installing vendor-approved patches to correct problems, and to identify operating systems.[13]

78.     Additionally, the FTC also recommends that companies understand their network's vulnerabilities and develop and implement policies to rectify security deficiencies.[14]

79.     Further, the FTC recommends that companies utilize an intrusion detection system to expose a data breach as soon as it occurs; monitor all incoming traffic for activity that might indicate unauthorized access into the system; monitor large amounts of data transmitted from the system; and have a response plan ready in the event of a data breach.[15]

80.     In another FTC publication, Start with Security: A Guide for Business, the FTC recommends, among other things, that companies "make sure [third-party] service providers implement reasonable security measures."[16]

81.     The FTC has prosecuted a number of enforcement actions against companies for

---

[12] *See Protecting Personal Information*, Federal Trade Commission, https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited Dec. 18, 2020).
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *See Start With Security: A Guide for Business*, Federal Trade Commission, https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited Dec. 18, 2020).

failing to take measures to protect consumer data adequately and reasonably. The FTC has viewed and treated such security lapses as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45.

82.    The Data Breach was a direct and proximate result of Defendant's failure to: (1) properly safeguard and protect Plaintiffs' and Class members' PI from unauthorized access, use, and disclosure, as required by various state and federal regulations, industry practices, and common law; (2) establish and implement appropriate safeguards to ensure the security and confidentiality of Plaintiffs' and Class members' PI; and (3) protect against reasonably foreseeable threats to the security or integrity of such information.

83.    Defendant failed to maintain reasonable data security procedures and practices.

84.    Defendant also failed to implement reasonable security procedures and practices to prevent cyber attackers from unauthorized access to its computer systems and network.

85.    Defendant's failure to maintain and implement reasonable and appropriate measures to protect against unauthorized access to consumer PI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

86.    Accordingly, Defendant did not comply with legal state and federal law requirements, as discussed *supra*.

87.    Defendant was at all times fully aware of its obligations to protect the PI of current and former employees, and their beneficiaries and dependents. Defendant was also aware of the significant consequences that would result from its failure to do so.

### *Plaintiffs and Class Members Have Been Injured and Will Suffer Additional Harm*

88.    To date, Defendant have merely offered complimentary identity theft and credit monitoring services for an unspecified duration. This offer, however, is wholly inadequate as it

fails to provide for the fact that victims of data breaches and other unauthorized disclosures commonly face multiple years of ongoing identity theft and it entirely fails to provide any compensation for the unauthorized release and disclosure of Plaintiffs' and Class Members' PI.

89.    Furthermore, Defendant's identity theft and credit monitoring offer to Plaintiffs and Class Members squarely places the burden on Plaintiffs and Class Members, rather than on the Defendant, to investigate and protect themselves from Defendant's tortious acts resulting in the Data Breach.  Rather than automatically enrolling Plaintiffs and Class Members in identity theft and credit monitoring services upon discovery of the breach, Defendant merely sent instructions offering the services to affected employees, former employees, and their beneficiaries and dependents with the recommendation that they sign up for the services.

90.    As a result of the Data Breach and Defendant's failure to provide timely notice to Plaintiffs and Class members, Plaintiffs' and Class Members' PI, including information associated with their beneficiaries and dependents, are now in the hands of unknown hackers, and Plaintiffs and Class members now face an imminent heightened, and substantial risk of identity theft and other fraud, which is a concrete and particularized injury traceable to Defendant's conduct.

91.    The consequences of Defendant's failure to keep Plaintiffs' and Class members' PI and all information associated with their PI secure and protected are severe.

92.    Thieves are already using the PI stolen to attempt to commit actual fraud and identity theft, as occurred to Plaintiffs as alleged herein.

93.    Theft of personal and financial information is a serious and growing problem in the United States.

94.    Personal and financial information is a valuable commodity to identity thieves. As cyber security experts and journalists have recognized, the PI leaked in a data breach presents a

treasure trove of information which could be sold on the Dark Web to other criminals and fraudsters to be used in countless illegal and fraudulent ways.

95.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[17]

96.     The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."

97.     The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identify thieves use identifying data such as Social Security Numbers to open financial accounts, receive government benefits and incur charges and credit in a person's name.[18]  As the GAO Report states, this type of identity theft is the most harmful because it often takes some time for the victim to become aware of the theft, and the theft can impact the victim's credit rating adversely.[19]

98.     Accordingly, identify theft victims must spend countless hours and large amounts of money repairing the impact to their credit.

99.     PI is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years. According to the GAO Report:

---

[17] *FTC Issues Final Rules on FACTA Identity Theft Definitions, Active Duty Alert Duration, and Appropriate Proof of Identity*, Federal Trade Commission (Oct. 24, 2004), https://www.ftc.gov/news-events/press-releases/2004/10/ftc-issues-final-rules-facta-identity-theft-definitions-active (last visited Dec. 18, 2020).
[18] U.S. Gov. Accountability Office, GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Theft is Limited; However the Full Extent is Unknown* (2007).
[19] *Id.*

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

100.    A 2014 study by the U.S. Department of Justice found that the average cost to a victim of identity theft is $1,343.[20]

101.    According to a 2019 report, identity fraud caused nearly $17 billion in damage to victims and that the most common types of identity fraud are opening new credit card and bank accounts, business and personal loans, auto loans, and student loans.[21]

102.    Indeed, data breaches and identity theft and financial fraud have a crippling effect on individuals and detrimentally impact the economy as a whole.

103.    For all the above reasons, Plaintiffs and Class Members have suffered harm; and there is a substantial risk of injury to Plaintiffs and Class members that is imminent and concrete and that will continue for years to come.

104.    As a direct and proximate result of Defendant's wrongful actions and inaction, Plaintiffs and Class members have suffered injury and damages, including the increased risk of identity theft, identity fraud, and financial fraud; improper disclosure of PI, the time and expense necessary to mitigate, remediate, and sort out the increased risk of identity theft and the inability to use debit cards because those cards were canceled, suspended, or otherwise rendered unusable as a result of the data breach, and/or false or fraudulent charges stemming from the data breaches.

---

[20] *See* Cody Gredler, *The Real Cost of Identity Theft*, CSID (Sept. 9, 2016), https://www.csid.com/2016/09/real-cost-identity-theft/ (last visited Dec. 17, 2020).

[21] *See* Gayle Sato, *The Unexpected Costs of Identity Theft*, Experian (Sept. 30, 2020), https://www.experian.com/blogs/ask-experian/what-are-unexpected-costs-of-identity-theft/ (last visited Dec 17, 2020).

## CLASS ACTION ALLEGATIONS

105.    Plaintiffs bring this action and seek to certify and maintain it as a class action under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4), on behalf of themselves, and the following proposed Classes (collectively, the "Class"):

The **Nationwide Class** is defined as follows: All individuals residing in the United States whose Private Information was compromised in the data breach initially disclosed by Canon in or about August 2020.

The **New York Class** is defined as follows: All individuals residing in New York whose Private Information was compromised in the data breach initially disclosed by Canon in or about August 2020.

The **Ohio Class** is defined as follows: All individuals residing in Ohio whose Private Information was compromised in the data breach initially disclosed by Canon in or about August 2020.

The **Florida Class** is defined as follows: All individuals residing in Florida whose Private Information was compromised in the data breach initially disclosed by Canon in or about August 2020.

The **Illinois Class is** defined as follows: All individuals residing in Illinois whose Private Information was compromised in the data breach initially disclosed by Canon in or about August 2020**.**

The **Canon Employee Class** is defined as follows: All current and former employees of Canon whose Private Information was compromised in the data breach initially disclosed by Canon in or about August 2020.

106.    Excluded from each of the above proposed Classes are: Defendant, any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendant; and judicial officers to whom this case is assigned and their immediate family members.

107.    Plaintiffs reserve the right to re-define the Class definitions after conducting discovery.

108.    Each of the proposed Classes meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and/or (c)(4).

109.    **Numerosity. Fed. R. Civ. P. 23(a)(1).** Pursuant to Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiffs at this time, the proposed Class includes potentially tens of thousands of individuals whose Private Information was compromised in the Data Breach. Class members may be identified through objective means, including by and through Defendant's business records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

110.    **Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Pursuant to Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual Class members. The common questions include:

(a)      Whether Defendant had a legal duty to implement and maintain reasonable security procedures and practices for the protection of Class members' personal and financial information, including by vendors;

(b)      Whether Defendant breached its legal duty to implement and maintain reasonable security procedures and practices for the protection of Plaintiffs' and Class Members' personal and financial information;

(c)      Whether Defendant's conduct, practices, actions, and omissions, resulted in or was the proximate cause of the data breach, resulting in the loss of personal and financial information of Plaintiffs and Class Members;

(d)      Whether Defendant had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

(e)      Whether Defendant breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

(f)      Whether and when Defendant knew or should have known that Canon's computer systems were vulnerable to attack;

(g)      Whether Defendant failed to implement and maintain reasonable and adequate security measures, procedures, and practices to safeguard Plaintiffs' and Class Members' personal and financial information, including by vendors;

(h)      Whether Defendant breached implied contracts with Plaintiffs and the Class in failing to have adequate data security measures despite promising to do so;

(i)      Whether Defendant's conduct was negligent;

(j)      Whether Defendant's conduct was *per se* negligent;

(k)    Whether Defendant's practices, actions, and omissions constitute unfair or deceptive business practices;

(l)    Whether Plaintiffs and Class Members suffered legally cognizable damages as a result of Defendant's conduct, including increased risk of identity theft and loss of value of their personal and financial information; and

(m)    Whether Plaintiffs and Class members are entitled to relief, including damages and equitable relief.

111.    **Typicality. Fed. R. Civ. P. 23(a)(3).**  Pursuant to Rule 23(a)(3), Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs, like all members of the Class, were injured through Defendant's uniform misconduct described above and asserts similar claims for relief.  The same events and conduct that give rise to Plaintiffs' claims also give rise to the claims of every other Class member because Plaintiffs and each Class member is a person that has suffered harm as a direct result of the same conduct engaged in by Defendant and resulting in the data breach.

112.    **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)**. Pursuant to Rule 23(a)(4), Plaintiffs and their counsel will fairly and adequately represent the interests of the Class members. Plaintiffs have no interest antagonistic to, or in conflict with, the interests of the Class members. Plaintiffs' lawyers are highly experienced in the prosecution of consumer class actions and data breach cases.

113.    **Superiority (Fed. R. Civ. P. 23(b)(3)**. Pursuant to Rule 23(b)(3), a class action is superior to individual adjudications of this controversy. Litigation is not economically feasible for individual members of the Class because the amount of monetary relief available to individual plaintiffs is insufficient in the absence of the class action procedure. Separate litigation could yield

inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

114. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)).** In the alternative, this action may properly be maintained as a class action, because:

(a) the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant; or

(b) the prosecution of separate actions by individual members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

115. **Issue Certification (Fed. R. Civ. P. 23(c)(4)**. In the alternative, the common questions of fact and law, set forth in Paragraph 110, are appropriate for issue certification on behalf of the proposed Class.

## COUNT I

### NEGLIGENCE
### (On Behalf of Plaintiffs and all Classes)

116.    Plaintiffs re-allege and incorporate by reference all paragraphs as if fully set forth herein.

117.    Defendant required Plaintiffs and Canon Employee Class Members ("Class Members" for the purposes of this count) to submit non-public, sensitive personal and financial information for purposes of employment with Defendant.

118.     Defendant had (and continues to have) a duty to Plaintiffs and Class Members to exercise reasonable care in safeguarding and protecting their personal and financial information. Defendant also had (and continues to have) a duty to use ordinary care in activities from which harm might be reasonably anticipated (such as in the storage and protection of personal and financial information within their possession, custody and control and that of its vendors).

119.    Defendant's duty to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its employees. Only Defendant was in a position to ensure that its systems were sufficient to protect against the harm to Plaintiffs and the Class Members from a data breach.

120.    Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the personal and financial information of Plaintiffs and Class Members.

121.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the personal and financial information of Plaintiffs and Class Members. The FTC publications and orders described above also form part of the basis

of Defendant's duty in this regard.

122.    Defendant required, gathered, and stored personal and financial information of Plaintiffs and Class Members for employment purposes.

123.    Defendant violated the FTCA by failing to use reasonable measures to protect the personal and financial information of Plaintiffs and Class Members and not complying with applicable industry standards, as described herein.

124.    Plaintiffs and Class Members are within the class of persons that the FTC Act was intended to protect.

125.    The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class Members.

126.    Defendant violated these standards and duties by failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' personal and financial information by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the personal and financial information entrusted to it – including Plaintiffs' and Class Members' personal and financial information. It was reasonably foreseeable to Defendant that its failure to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' personal and financial information, by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the unauthorized release, disclosure, and dissemination of Plaintiffs' and Class Members'

personal and financial information.

127.    Defendant, by and through its negligent actions, inaction, omissions, and want of ordinary care, unlawfully breached its duties to Plaintiffs and Class Members by, among other things, failing to exercise reasonable care in safeguarding and protecting Plaintiffs' and Class Members' personal and financial information within its possession, custody and control.

128.    Defendant, by and through its negligent actions, inactions, omissions, and want of ordinary care, further breached its duties to Plaintiffs and Class Members by failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures, protocols, and software and hardware systems for complying with the applicable laws and safeguarding and protecting their personal and financial information.

129.    But for Defendant's negligent breach of the above-described duties owed to Plaintiffs and Class Members, their personal and financial information would not have been released, disclosed, and disseminated without their authorization.

130.    Plaintiffs' and Class Members' personal and financial information was transferred, sold, opened, viewed, mined and otherwise released, disclosed, and disseminated to unauthorized persons without their authorization as the direct and proximate result of Defendant's failure to design, adopt, implement, control, direct, oversee, manage, monitor and audit its processes, controls, policies, procedures and protocols for complying with the applicable laws and safeguarding and protecting Plaintiffs' and Class Members' personal and financial information.

131.    Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused this Data Breach constitute negligence.

132.    As a direct and proximate result of Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data

Breach, Plaintiffs and Class Members have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

## COUNT II

## BREACH OF IMPLIED CONTRACT

### (On Behalf of Plaintiffs and the Canon Employee Class)

133.    Plaintiffs re-allege and incorporate by reference all paragraphs as if fully set forth herein.

134.    Defendant required Plaintiffs and Canon Employee Class Members ("Class Members" for the purposes of this count) to provide their personal information, including names, addresses, Social Security numbers, driver's license numbers or government issued identification numbers, electronic signatures, dates of birth, financial information, the personal information of their beneficiaries and dependents, and other personal information, as a condition of their employment.

135.    As a condition of Plaintiffs' and Class Members' employment with Defendant, they provided their personal and financial information, including but not limited to the personal information of their beneficiaries and dependents. In so doing, Plaintiffs and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately

notify Plaintiffs and Class Members if their data had been breached and compromised, or stolen.

136.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

137.    Defendant breached the implied contracts it made with Plaintiffs and Class Members by failing to safeguard and protect their personal and financial information, including the personal information of their beneficiaries and dependents, and by failing to provide timely and accurate notice to them that personal and financial information, along with the personal information of their beneficiaries and dependents, was compromised as a result of the data breach.

138.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and Class Members have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

## COUNT III

### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA") FLA. STAT. § 501.201 ET SEQ.

**(On Behalf of Plaintiffs Villacis and Pichardo and the Florida Class)**

139.    Plaintiffs re-allege and incorporate by reference all paragraphs as if fully set forth herein.

140.    FDUTPA prohibits "unfair methods of competition, unconscionable acts or

practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat.§ 501.204.

141.    Defendant engaged in the conduct alleged in this Complaint through transactions in and involving trade and commerce. Mainly, the Ransomware Attack and Data Breach occurred through the use of the internet, an instrumentality of interstate commerce.

142.    While engaged in trade or commerce, Defendant has violated FDUTPA, including, among other things, by:

   a.   Failing to implement and maintain appropriate and reasonable security procedures and practices to safeguard and protect the personal and financial information of Defendant's current and former employees and their beneficiaries from unauthorized access and disclosure;

   b.   Failing to disclose that its computer systems and data security practices were inadequate to safeguard and protect the personal and financial information of Defendant's current and former employees and their beneficiaries from being compromised, stolen, lost, or misused; and

   c.   Failing to disclose the Data Breach to Defendant's current and former employees in a timely and accurate manner in violation of Fla. Stat. § 501.171.

143.    Defendant knew or should have known that the Canon computer systems and data security practices were inadequate to safeguard Florida Class members' personal and financial information entrusted to it, and that risk of a data breach or theft was highly likely.

144.    Defendant should have disclosed this information because Defendant was in a superior position to know the true facts related to the defective data security.

145.    Defendant's failures constitute false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiffs Villacis and Pichardo and Florida Class Members) regarding the security of Canon's network and aggregation of personal and financial information.

146.    The representations upon which impacted individuals (including Plaintiffs Villacis and Pichardo and Florida Class Members) relied were material representations (e.g., as to Defendant's adequate protection of personal and financial information), and consumers (including Plaintiffs Villacis and Pichardo and Florida Class Members) relied on those representations to their detriment.

147.    Defendant's actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are and were substantially injurious to Defendant's current and former employees, as well as their beneficiaries and dependents.

148.    In committing the acts alleged above, Defendant engaged in unconscionable, deceptive, and unfair acts and practices acts by omitting, failing to disclose, or inadequately disclosing to Defendant's current and former employees that it did not follow industry best practices for the collection, use, and storage of personal and financial information.

149.    As a direct and proximate result of Defendant's conduct, Plaintiffs and other Members of the Class have been harmed and have suffered damages including, but not limited to: damages arising from attempted identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing and correcting the current and future consequences of the Data Breach.

150.    As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts and omissions, Plaintiffs' and Florida Class members' personal and financial information was disclosed to third parties without authorization, causing and will continue to cause Plaintiffs and Florida Class Members damages. Accordingly, Plaintiffs Villacis and Pichardo and Florida Class Members are entitled to recover actual damages, an order providing declaratory and injunctive relief, and reasonable attorneys' fees and costs, to the extent permitted by law.

## COUNT IV

### VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 349

### (On Behalf of Plaintiffs and the Nationwide Class, Or, Alternatively, Plaintiffs Buchbinder and McCartney and the New York Class)

151.    Plaintiffs re-allege and incorporate by reference all paragraphs as if fully set forth herein.

152.    Defendant engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and furnishing of services, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

(a) Defendant misrepresented material facts to Plaintiffs and the Class by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Class Members' PI from unauthorized disclosure, release, data breaches, and theft;

(b) Defendant misrepresented material facts to Plaintiffs and the Class by representing that they did and would comply with the requirements of federal and state laws pertaining to the privacy and security of Class Members' Private Information;

(c) Defendant omitted, suppressed, and concealed material facts of the inadequacy of its privacy and security protections for Class Members' PI;

(d) Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Class Members' PI, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Data Breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45);

(e) Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Data Breach to the Class in a timely and accurate manner, contrary to the duties imposed by N.Y. Gen. Bus. Law § 899-aa(2).

153.    Defendant knew or should have known that the Canon computer systems and data security practices were inadequate to safeguard the Class Members' PI entrusted to it, and that risk of a data breach or theft was highly likely.

154.    Defendant should have disclosed this information because Defendant was in a superior position to know the true facts related to the defective data security.

155.    Defendant's failure constitutes false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiffs and Class Members) regarding the security of Canon's network and aggregation of PI.

156.    The representations upon which consumers (including Plaintiffs and Class Members) relied were material representations (e.g., as to Defendant's adequate protection of PI), and consumers (including Plaintiffs and Class Members) relied on those representations to their detriment.

157.    Defendant's conduct is unconscionable, deceptive, and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances. As a direct and proximate result of Defendant's conduct, Plaintiffs and other Class Members have been harmed, in that they were not timely notified of the Data Breach, which resulted in profound vulnerability to their personal information and other financial accounts.

158.    As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts and omissions, Plaintiffs' and Class Members' PI was disclosed to third parties without authorization, causing and will continue to cause Plaintiff and Class Members damages.

159.    Plaintiffs and Class members seek relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## COUNT V

**VIOLATIONS OF THE CONSUMER SALES PRACTICES ACT ("CSPA")
OHIO. STAT. § 1345.02 ET SEQ. AND OHIO CONSUMER PROTECTION LAW
§1349.19
(On Behalf of Plaintiff Finnigan and the Ohio Class)**

160.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

161.    CSPA prohibits an "unfair or deceptive act or practice in connection with a consumer transaction."  Ohio. Stat.§ 1345.02(A).

162.    In addition, CSPA also prohibits an "unconscionable act or practice in connection with a consumer transaction."  Ohio. Stat.§ 1345.03(A).

163.    Defendant engaged in the conduct alleged in this Complaint through transactions in and involving trade and commerce. Mainly, the Data Breach occurred through the use of the internet, an instrumentality of interstate commerce.

164.    While engaged in trade or commerce, Defendant has violated CSPA, including,

among other things, by:

      a.  Failing to implement and maintain appropriate and reasonable security procedures and practices to safeguard and protect the personal and financial information of Defendant's current and former employees and their beneficiaries from unauthorized access and disclosure; and

      b.  Failing to disclose that its computer systems and data security practices were inadequate to safeguard and protect the personal and financial information of Defendant's current and former employees and their beneficiaries from being compromised, stolen, lost, or misused

165.    Defendant failed to disclose the Data Breach to Defendant's current and former employees in a timely and accurate manner in violation of Ohio. Stat. § 1349.19(B)(2).

166.    Defendant knew or should have known that the Canon computer systems and data security practices were inadequate to safeguard Ohio members' personal and financial information entrusted to it, and that risk of a data breach or theft was highly likely.

167.    Defendant should have disclosed this information because Defendant was in a superior position to know the true facts related to the defective data security.

168.    Defendant's failures constitute false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiff Finnigan and Ohio Class Members) regarding the security of Canon's network and aggregation of personal and financial information.

169.    The representations upon which impacted individuals (including Plaintiff Finnigan and Ohio Class Members) relied were material representations (e.g., as to Defendant's adequate protection of personal and financial information), and consumers (including Plaintiff Finnigan and

34

Ohio Class Members) relied on those representations to their detriment.

170.    Defendant's actions constitute unconscionable or deceptive acts or practices because, as alleged herein, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are and were substantially injurious to Defendant's current and former employees, as well as their beneficiaries and dependents.

171.    In committing the acts alleged above, Defendant engaged in unconscionable or deceptive acts and practices by omitting, failing to disclose, or inadequately disclosing to Defendant's current and former employees that it did not follow industry best practices for the collection, use, and storage of personal and financial information.

172.    As a direct and proximate result of Defendant's conduct, Plaintiff and other Members of the Class have been harmed and have suffered damages including, but not limited to: damages arising from attempted identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing and correcting the current and future consequences of the Data Breach.

173.    As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts and omissions, Plaintiff's and Ohio Class members' personal and financial information was disclosed to third parties without authorization, causing and will continue to cause Plaintiffs and Ohio Class Members damages. Accordingly, Plaintiff Finnigan and Ohio Class Members are entitled to recover actual damages, an order providing declaratory and injunctive relief, and reasonable attorneys' fees and costs, to the extent permitted by law.

## COUNT VI

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**

**(On Behalf of Plaintiff Serkowski and the Illinois Class)**

174.    Plaintiff re-alleges and incorporates by reference all paragraphs as if fully set forth herein.

175.    Plaintiff Serkowski and the other members of the Illinois Class were deceived by Defendant's failure to properly implement adequate, commercially reasonable security measures to protect their Private Information.

176.    Defendant intended for Plaintiff Serkowski and the other members of the Illinois Class to rely on Defendant to protect the information furnished to it, in such manner that the PI would be protected, secure, and not susceptible to access from unauthorized third parties.

177.    Defendant instead handled Plaintiff Serkowski's and the other Illinois Class Members' Private Information in such manner that it was compromised.

178.    Defendant failed to follow industry best practices concerning data theft or was negligent in preventing such data theft from occurring.

179.    It was foreseeable that Defendant's willful indifference or negligent course of conduct in handling its employees, beneficiaries, dependents, and others Private Information would put that information at risk of compromise by data thieves.

180.    Defendant benefited from mishandling its employees, beneficiaries, dependents, and others Private Information because, by not taking preventative measures that would have prevented the data from being compromised, Defendant saved on the cost of those security measures.

181.    Defendant's fraudulent and deceptive acts and omissions were intended to induce

Plaintiff Serkowski's and the other Illinois Class members' reliance on Defendant's deception that their Private Information was secure and protected.

182.    Defendant violated 815 ILCS 505/2 by failing to properly implement adequate, commercially reasonable security measures to protect Plaintiff Serkowski's and the other Illinois Class Members' Private Information.

183.    Defendant's acts or practice of failing to employ reasonable and appropriate security measures to protect consumers' personal information constitute violations of the Federal Trade Commission Act, 15 U.S.C. § 45(a).

184.    Defendant's conduct constitutes unfair acts or practices as defined in that statute because Defendant caused substantial injury to Class Members that is not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

185.    The consumer protection statutes or interpretive law of the Consumer Fraud States have also either: (a) expressly prohibited omissions of material fact, without regard for reliance on the deception, or (b) have not addressed those issues.

186.    Defendant also violated 815 ILCS 505/2 by failing to immediately notify affected customers of the nature and extent of the Ransomware Attack pursuant to the Illinois Personal Information Protection Act, 815 ILCS 530/1, et seq., which provides:

Sec. 10. Notice of Breach.

(a) Any data collector that owns or licenses personal information concerning an Illinois resident shall notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach. The disclosure notification shall be made in the most expedient time possible and without unreasonable delay, consistent with any measures necessary to determine the scope of the breach and restore the reasonable integrity, security, and confidentiality of the data system.

187.    815 ILCS 530/20 provides that a violation of 815 ILCS 530/10 "constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act."

188.    Plaintiff Serkowski and the other Illinois Class Members have suffered injury in fact and actual damages including lost money and property as a result of Defendant's violations of 815 ILCS 505/2.

189.    Plaintiff Serkowski and the other Class Members' injuries were proximately caused by Defendant's fraudulent and deceptive behavior.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the members of the Classes defined above, respectfully request that this Court:

B.    Certify this case as a class action under Federal Rule of Civil Procedure 23, appoint Plaintiffs as the Class representatives, and appoint the undersigned as Class counsel;

C.    Order appropriate relief to Plaintiffs and the Classes;

D.    Enter injunctive and declaratory relief as appropriate under the applicable law;

E.    Award Plaintiffs and the Classes pre-judgment and/or post-judgment interest as prescribed by law;

F.    Award reasonable attorneys' fees and costs as permitted by law; and

G.    Enter such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all claims so triable.

DATED: December 22, 2020

By: _____

Gary S. Graifman
Melissa R. Emert
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Telephone: (845) 356-2570
Facsimile: (845) 356-4335
ggraifman@kgglaw.com
memert@kgglaw.com


Gary E. Mason*
David K. Lietz*
**MASON LIETZ & KLINGER LLP**
5301 Wisconsin Avenue, NW
Suite 305
Washington, DC 20016
Tel:  (202) 429-2290
gmason@masonllp.com
dlietz@masonllp.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel:  (202) 429-2290
gklinger@masonllp.com


*pro hac vice to be filed                    *Attorneys for Plaintiffs and the Proposed Class*