**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: CANON U.S.A. DATA BREACH LITIGATION<br><br>This Documents Related To:<br><br>All Actions | Case No. 1:20-cv-06239-AMD-SJB<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

CASE SUMMARY ......................................................................................................... 3

    A.    The Data Breach .............................................................................. 3

    B.    Procedural Posture ......................................................................... 3

    C.    History of Negotiations .................................................................. 4

SUMMARY OF SETTLEMENT ..................................................................................... 5

    A.    Settlement Class ............................................................................. 5

    B.    The Settlement Benefits ................................................................. 5

        1.    Ordinary Expense Reimbursement ................................... 6

        2.    Extraordinary Expense Reimbursement ........................... 6

        3.    Credit Monitoring and Identity Protection ...................... 7

        4.    Ongoing Data Security Efforts and Enhancements ......... 7

    C.    Defendants' Payment of Notice and Administrative Costs ............ 8

        1.    Notice .............................................................................. 8

        2.    Claims, Objections, and Requests for Exclusion ............ 8

    D.    Attorneys' Fees, Costs, and Service Awards ............................... 10

ARGUMENT ................................................................................................................ 11

I.    THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR
PRELIMINARY APPROVAL ............................................................................. 11

    A.    The Preliminary Approval Legal Standard .................................. 11

    B.    The Settlement Is Procedurally Fair .............................................. 13

    C.    The Settlement is Substantively Fair ............................................ 14

        1.    The complexity, expense, and likely duration of litigation .................... 14

        2.    The reaction of the class to the Settlement .............................. 15

        3.    The stage of the proceedings and the amount of discovery
completed ....................................................................... 16

        4.    The risks of establishing liability and damages ...................... 17

        5.    The risk of maintaining class action status through trial ......... 18

        6.    The ability of Defendant to withstand greater judgment ......... 18

        7.    The range of reasonableness of the Settlement in light of the best
possible recovery and attendant risks of litigation ................... 19

II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED ................................... 20

    A.    The Requirements of Rule 23(a) Are Satisfied .............................. 20

      1.    Numerosity................................................................................. 21

      2.    Commonality............................................................................. 21

      3.    Typicality ................................................................................. 22

      4.    Adequacy of representation ...................................................... 22

  D.    The Requirements of Rule 23(b)(3) Are Satisfied ............................... 23

      1.    Common legal and factual questions predominate in this action ............ 24

      2.    A class action is the superior means to adjudicate Plaintiffs' claims ...... 25

III.    THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN .................... 26

  A.    The Court Should Schedule a Fairness Hearing and Approve the Proposed
        Preliminary Approval Order ................................................................ 28

VI.    CONCLUSION .......................................................................................... 29

Plaintiffs Michael Finnigan, Kenneth Buchbinder, Brian McCartney, Tyrone Villacis, Luis Pichardo, Andrew Hamid, Amy Lynn Hamid, Woodrow Moss, and Diana Rouse (collectively, "Representative Plaintiffs"), individually and on behalf of all others similarly situated, respectfully submit this memorandum of law in support of their Unopposed Motion for Preliminary Approval of Class Action Settlement ("Motion"). The terms of the class action settlement (the "Settlement") are set forth in a Settlement Agreement and Release (the "Settlement Agreement"), attached hereto as Exhibit 1.

## INTRODUCTION

This litigation arises from a ransomware attack suffered by Canon on or about August 4, 2020 that resulted in the unauthorized access of personally identifiable information ("PII") of Plaintiffs and Class Members, who are employees and their beneficiaries and dependents of Defendant (the "Data Breach").  On August 6, 2020, Canon announced the Data Breach to its employees. (Compl. ¶ 5.)  On November 24, 2020, after a preliminary investigation, Canon sent a "Notice of Data Breach" to those employees who worked for Canon from 2005-2020, as well as their beneficiaries and dependents. (Compl. ¶ 6.)  Canon's Notice of Data Breach informed the relevant individuals that their information may have been exposed to unauthorized activity and that the information at issue included certain names, Social Security numbers, driver's license numbers or government-issued identification numbers, financial account numbers provided for direct deposit, electronic signatures, and dates of birth (the PII). (Compl. ¶ 7.)  The Notice of Data Breach also provided one-year of free credit monitoring.  (*See* Compl. Ex. A, Notice of Data Breach.)

After Canon provided notice of the Data Breach, beginning on or around November 24, 2020, three separate class action complaints were filed in the Eastern District of New York: *Finnegan, et al. v. Canon U.S.A., Inc.*, 1:20-cv-06239-AMD-SJB"); *Hamid v. Canon U.S.A., Inc. et al.*, No. 1:20-cv-06380-AMD-SJB; and *Rouse, et al. v. Canon U.S.A., Inc.*, No. 2:21-cv-004140-

SJF-ARL.   Those cases were all deemed related and on January 25, 2021, the cases were consolidated.  (ECF 9).

On June 22, 2022, the Parties participated in a full-day mediation with Mediator Bennett J. Picker, a well-respected mediator experienced in mediating cases of this type.  Although the Parties did not settle the case during this mediation session, over the next few months they continued to discuss resolution with the help of the Mediator. Subsequently the Parties were able to reach an agreement in principal and memorialized the terms in the attached Settlement Agreement.

This Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Canon and the Released Persons (as defined below) relating to the Data Breach, by and on behalf of the Representative Plaintiffs and Settlement Class Members (as defined below) and any other such actions by and on behalf of any other persons in the United States and relating to the Data Breach.

Pursuant to the Settlement Agreement, Representative Plaintiffs now respectfully request that this Court: (1) preliminarily approve the Parties' Settlement as fair, adequate, reasonable, and within the reasonable range of possible final approval; (2) appoint Representative Plaintiffs Michael Finnigan, Kenneth Buchbinder, Brian McCartney, Tyrone Villacis, Luis Pichardo, Andrew Hamid, Amy Lynn Hamid, Woodrow Moss, and Diana Rouse as Class Representatives; (3) appoint Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, LLC and John A Yanchunis of Morgan & Morgan Complex Litigation Group as Lead Class Counsel and Lori Feldman of George Gesten McDonald, PLLC as additional Class Counsel; (4) provisionally certify the Settlement Class under Federal Rule of Civil Procedure 23(b)(3) and (e) for settlement purposes only; (5) approve the Parties' proposed notice program, confirm that it is appropriate notice and that it satisfies due process and Rule 23, and direct notice to the Settlement Class; (6) set a date for a final approval hearing; and (7) set deadlines for members of the Settlement Class to submit claims for compensation and to object to or exclude themselves from the Settlement.

**CASE SUMMARY**

**A.      The Data Breach**

Defendants are a leading provider of consumer, business-to-business, and industrial digital imaging solutions to the United States and to Latin American and the Caribbean markets. Defendants' employees entrust Defendants with an extensive amount of their PII.  Defendants retain this information on computer hardware—even after the employment relationship ends. Defendants assert that they understand the importance of protecting such information.

On or before August 4, 2020, Defendants learned that a breach of Defendants' computer network had occurred and that it involved ransomware. Defendants determined that the Data Breach involved unauthorized activity on their network between July 20, 2020 and August 6, 2020, including unauthorized access to files on Defendants' servers.  These servers contained files that in turn contained the PII of Defendants' current and former employees and their beneficiaries and dependents.

On or around August 6, 2020, Defendants circulated an internal alert to their employees disclosing the Data Breach. More than three months later, in a "Notice of Data Breach" dated November 24, 2020, Defendants advised that they were informing current and former employees of Defendants from 2005 to 2020, and their beneficiaries and dependents, of the Data Breach.

**B.      Procedural Posture**

After Canon provided notice of the Data Breach, beginning on or around November 24, 2020, three separate class action complaints were filed in the Eastern District of New York: *Finnegan, et al. v. Canon U.S.A., Inc*., 1:20-cv-06239-AMD-SJB"); *Hamid v. Canon U.S.A., Inc. et al.*, No. 1:20-cv-06380-AMD-SJB; and *Rouse, et al. v. Canon U.S.A., Inc*., No. 2:21-cv-004140-SJF-ARL. Those cases were all deemed related and on January 25, 2021, the cases were consolidated.  (ECF 9).

On January 28, 2021, Representative Plaintiffs filed a motion for the appointment of interim class counsel.  (ECF 12).  On March 9, 2021, the Court entered an Order Appointing Interim Co-Lead Class Counsel and Executive Committee ("Interim Class Counsel"). (ECF 19).

On April 23, 2021, a Consolidated Class Action Complaint was filed. (ECF 22) (the "Complaint"). On July 12, 2022, Canon filed a Motion to Dismiss the Complaint. (ECF 27-28). On August 2, 2022, Representative Plaintiffs filed a Consolidated Amended Class Action Complaint (the "Amended Complaint"). (ECF 30). On August 25, 2022, Canon filed a Motion to Dismiss the Amended Complaint (the "Motion"). (ECF 31-32). On March 15, 2022, United States District Judge Ann M. Donnelly issued a Memorandum Decision and Order denying in part and granting in part the Motion to Dismiss. (ECF 40).

On April 12, 2022, Canon timely filed an Answer to the remaining allegations and claims in the Amended Complaint. (ECF 43). On April 19, 2022, the Parties appeared for a status conference before the Honorable Sanket J. Bulsara, U.S.M.J.  Pursuant to an Order entered by Judge Bulsara, the Parties advised the Court on May 6, 2022 that they would participate in private mediation. (ECF 46).

### C.      History of Negotiations

To facilitate their settlement negotiations, the Parties agreed to use experienced mediator Bennett J. Picker. (*See* Joint Declaration of John Yanchunis and Gary M. Klinger ("Joint Decl."), attached hereto as Exhibit 2 at ¶ 6). Mr. Picker has extensive experience in class action mediation, including privacy litigation. (Id.). On June 22, 2022, the Parties attended a full day mediation session with Mr. Picker. While the Parties made some progress, several key factual and legal issues remained in dispute. (Id.). For the next several weeks, the Parties continued to engage in the mediation process with the efforts of Mr. Picker. (Id.) Ultimately the Parties reached an agreement in principle (Id.), after which the Parties began  drafting and finalizing the Settlement, Notice and Claim Forms, and drafting the motion for preliminary approval for presentment to the Court.

## SUMMARY OF SETTLEMENT

### A.    Settlement Class

The settlement negotiated on behalf of the Class provides for two separate forms of relief: (1) monetary relief, including Credit Monitoring and Identity Protection; and (2) equitable relief in the form of enhanced security practices and procedures to better secure and protect the PII of Settlement Class members. (Joint Decl. ¶ 7). Consistent with the operative complaint, the Settlement provides for a Class of:

> All individuals residing in the United States whose PII was compromised in the Data Incident.

(Settlement Agreement ¶1.31). The Class specifically excludes: (i) Canon (including all Defendants) and its officers and directors; (ii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iii) the Judge assigned to evaluate the fairness of this settlement and members of his or her immediate family; and (iv) the attorneys representing the Parties in the Litigation. Also excluded from the Class are those persons and entities who timely and validly request exclusion therefrom by 60 days after the Notice date. *Id*.

### B.    The Settlement Benefits

The Settlement provides for both monetary and equitable relief. Canon has agreed to pay the claims of Settlement Class members arising from the Data Breach. (Settlement Agreement ¶ 2). Canon will also be responsible for payment of all reasonable costs of notice and administration in addition to the claims of Settlement Class members. (Id.). Canon will pay any amounts approved by the Court for awards of attorneys' fees, costs, and expenses, and service awards for the Class Representatives.  (Settlement Agreement ¶ 7).  In addition, Canon has agreed to maintain  business practice changes to increase the protection of Settlement Class members PII in Canon's post session. (Settlement Agreement ¶ 2).

### 1.    Ordinary Expense Reimbursement

All Settlement Class Members who submit a valid claim using the Claim Form (Exhibit A to the Settlement Agreement) are eligible to receive reimbursement for documented out-of-pocket losses that were incurred between August 4, 2020 and the date of this Settlement Agreement, if plausibly caused by the Data Incident, not to exceed $300 per Settlement Class Member, including: (i) cost to obtain credit reports; (ii) fees relating to a credit freeze; (iii) card replacement fees; (iv) late fees; (v) overlimit fees; (vi) interest on payday loans taken as a result of the Data Incident; (vii) other bank or credit card fees; (viii) postage, mileage, and other incidental expenses resulting from lack of access to an existing account; (ix) costs associated with credit monitoring or identity theft insurance purchased prior to the Effective Date of the Settlement, if purchased primarily as a result of the Data Incident (with reasonable documentation and an affirmative statement by Settlement Class Member that it was purchased primarily because of the Data Incident, and with proof of purchase); and (x) compensation for attested-to lost time spent monitoring accounts, reversing fraudulent charges, or otherwise dealing with the aftermath/cleanup of the Data Incident, at a rate of $20 for up to four (4) hours (attestation requires at least a narrative description of the activities performed during the time claimed and their connection to the Data Incident). (Settlement Agreement ¶ 2.1).

### 2.    Extraordinary Expense Reimbursement

Settlement Class Members are also eligible to receive extraordinary expense reimbursement, not to exceed $7,500 per Settlement Class Member, for monetary out-of-pocket losses that occurred more likely than not as a result of the Data Incident if: (a) it is an actual, documented, and unreimbursed monetary loss; (b) was caused by the Data Incident; (c) occurred during the time period from August 4, 2020, through and including the end of the Claims Deadline (*see* ¶ 2.4); (d) is not an amount already covered by one or more of the categories in ¶ 2.1; (e) the claimant made reasonable efforts to avoid, or seek reimbursement for the loss, including but not

limited to exhaustion of all available credit monitoring insurance and identity theft insurance. Settlement Class Members may only submit one claim for benefits under this paragraph ¶ 2.2 and the total of all amounts recovered under this paragraph shall not exceed $7,500 per Settlement Class Member.

### 3.   Credit Monitoring and Identity Protection

In addition to being able to submit a claim for ordinary or extraordinary expenses, Settlement Class Members are eligible to receive two (2) years of Identity Protection services, which includes three bureau credit monitoring and alerts. This is in addition to the credit monitoring services previously offered to individuals who were notified of the Data Incident. Settlement Class Members need only submit a claim for Identity Protection and credit monitoring by indicating the request on the Claim Form, and codes will be sent either to an e-mail address provided by the Settlement class member or, if they do not have an e-mail address, mailed to the address provided on the claim form. (Settlement Agreement ¶ 2.2).

### 4.   Ongoing Data Security Efforts and Enhancements

In addition to the monetary benefits described above, the Settlement Agreement also acknowledges Canon's commitment to maintain certain enhancements and improvements to its security environment, which Class Counsel has reviewed in connection with this Settlement. (Settlement Agreement ¶ ). Canon agrees to maintain at a minimum, for a period of one (1) year following final approval of the settlement, enhanced security practices and procedures that were implemented following the Data Incident, including deployment of endpoint detection and response tools to its servers and workstations; engagement of a third-party security operations center to provide constant monitoring of its network; a local administrator password vault solution; and multi-factor authentication and application control for access to domain controllers. (Settlement Agreement ¶ 2.5).

C.     **Defendants' Payment of Notice and Administrative Costs**

1.     **Notice**

Canon shall pay for all of the costs associated with the Claims Administrator and for providing Notice to the Settlement Class in accordance with the Preliminary Approval Order as well as the costs of such notice. (Settlement Agreement ¶ 2.7).  Notice shall be provided to Settlement class members in accordance with the Notice plan set forth in this Motion and attached in the Declaration of Cameron Azari attached hereto as Exhibit 3.  The Notice plan shall be subject to approval by the Court as meeting constitutional due process requirements.  The Claims Administrator shall establish a dedicated settlement website and shall maintain and update the website throughout the claim period, with the Notice and Claim Form approved by the Court, as well as this Settlement Agreement. A toll-free help line staffed with a reasonable number of live operators shall be made available to address Settlement Class Members' inquiries.  The Claims Administrator also will provide copies of the forms of the Notice and Claim Form approved by the Court, as well as this Settlement Agreement, upon request.  Prior to the Final Fairness Hearing, Interim Class Counsel and/or Canon's counsel shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of Notice.  The Notice and Claim Form approved by the Court may be adjusted by the Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval.  The Notice Program shall commence within thirty (30) days after entry of the Preliminary Approval Order and shall be completed within sixty (60) days after entry of the Preliminary Approval Order.

2.     **Claims, Objections, and Requests for Exclusion**

The suggested timing of the claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Settlement Agreement, compile documents

supporting their claim, familiarize themselves with the benefits available through the identity theft product, and decide whether they would like to opt-out of or object to the Settlement.

Settlement Class Members will have ninety (90) days from the commencement of the notice mailing to submit their claim form to the Settlement Administrator, either by mail or online. (Settlement Agreement ¶ 2.4). The Settlement Administrator has authority to assess the validity of claims, and upon receipt of an incomplete or unsigned Claim Form, is required to request additional information and/or documentation and give the Settlement Class Member the opportunity to cure the defect before rejecting the claim. (Settlement Agreement ¶ 8).

Any Settlement Class Member who wishes to opt-out of the Settlement will have until one hundred twenty (120) days after the commencement of Notice to provide written notice that they would like to be excluded from the Settlement Class. (Settlement Agreement ¶ 4). Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Settlement Administrator. (Id.). The written notice must clearly manifest a Settlement Class Member's intent to opt-out of the Settlement Class. (Id.).

Similarly, Settlement Class Members who wish to object to the terms of the Settlement Agreement must do so in writing and send their objection to the Settlement Administrator one hundred twenty (120) days from the date on which Notice commences. (Settlement Agreement ¶ 5). The written objection must include (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) the identity of all counsel representing the objector; (v) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; and (vi) the objector's signature and the signature of the objector's duly authorized attorney or other duly

authorized representative (along with documentation setting forth such representation). To be timely, written notice of an objection in the appropriate form must be filed with the Clerk of the Court for the U.S. District Court for the Eastern District of New York no later than one hundred twenty (120) days from the date on which the Notice Program commences pursuant to ¶ 3.2 and served concurrently on the Claims Administrator with copies to Interim Class Counsel. (Settlement Agreement ¶ 9.9).

> ### D.    Attorneys' Fees, Costs, and Service Awards

By separate motion, Class Counsel will apply to the Court for an award of attorneys' fees and expenses to be paid by Defendants. A fee and expense petition will be filed with the Court at least 21 days in advance of the objection deadline.[1]

Class Counsel will also apply to the Court for a service award of $1,000 for each Class Representative to be paid by Canon. (Settlement Agreement ¶7). Since the litigation was commenced, Class Representatives have been dedicated and active participants. They investigated the matter prior to and after retaining counsel, participated in the plaintiff vetting process implemented by Class Counsel, reviewed and approved pleadings, kept in close contact with counsel to monitor the progress of the litigation, provided documents, drafted discovery requests, and reviewed and communicated with counsel regarding the Settlement. (Joint Decl. ¶ 13).

Each Class Representative put their name and reputation on the line for the sake of the Class, and the recovery would not have been possible without their efforts. In view of these efforts, Class Counsel will separately petition the Court for approval of service awards in the amount of $1,000 for each of the Class Representatives. This amount is consistent with those approved in other data breach class action settlements.

---

[1] As the parties have not agreed on what constitutes a reasonable award of attorneys' fees in this matter, Defendants reserve the right to respond and/or object to Class Counsel's application.

**ARGUMENT**

I.  **THE PROPOSED SETTLEMENT MEETS THE STANDARD FOR PRELIMINARY APPROVAL**

Class Counsel have worked very diligently in this litigation, engaging in discovery, independent investigation and expert analysis to reach a fair, reasonable and, adequate settlement. This Settlement was reached only after the motion to dismiss was fully briefed, and the Parties had mediated. In negotiating and evaluating the Settlement, Representative Plaintiffs and Class Counsel have taken the uncertainties of litigation into account, as well as the risks and delays inherent in complex class action litigation. Class Counsel believe the proposed Settlement provides very significant relief to the Settlement Class members and is fair, reasonable, adequate, and in the best interests of the Settlement Class. In comparing this Settlement to other data breach settlements, the benefits available to Settlement Class Members here are on the highest range of possibilities.

A.  **The Preliminary Approval Legal Standard**

Under Rule 23(e)(2) of the Federal Rules of Civil Procedure, a court may approve a class action settlement "only . . . on finding that [the settlement agreement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The "fair, reasonable, and adequate" standard effectively requires parties to show that a settlement agreement is both procedurally and substantively fair. *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013). The preliminary approval process is governed by a "likelihood standard," requiring the Court to assess whether the parties have shown that "the court will likely be able to grant final approval and certify the class." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019) ("*Payment Card*"). In conducting a preliminary approval inquiry, a court considers both the "negotiating process leading up to the settlement, i.e., procedural fairness, as well as the settlement's substantive terms, i.e., substantive fairness." *In re Platinum & Palladium Commodities Litig.*, No. 10-cv-3617, 2014 WL 3500655, at *11 (S.D.N.Y. Jul. 15, 2014).

Under the December 1, 2018 amendments to Rule 23(e)(2), in weighing preliminary approval, the Court must consider whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats Settlement class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). "Paragraphs (A) and (B) constitute the procedural analysis factors, and examine the conduct of the litigation of the negotiations leading up to the proposed settlement. Paragraphs (C) and (D) constitute the substantive analysis factors, examine "[t]he relief that the settlement is expected to provide to class members." *Payment Card*, 330 F.R.D. at 29. These "factors add to, rather than displace," the factors traditionally considered in the Second Circuit during the preliminary approval process. *Id.*

"Preliminary approval requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Monzon v. 103W77 Partners, LLC*, 13-cv-5951-AT, 2014 WL 6480557 (S.D.N.Y. Oct. 15, 2014) (citations omitted). "To grant preliminary approval, the court need only find that there is 'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *Id.* (citations and quotations omitted); *accord Tart v. Lions Gate Entm't Corp.*, No. 14-cv-8004-AJN, 2015 WL 5945846, at *5 (S.D.N.Y. Oct. 13, 2015). "If the proposed settlement appears to fall within the range of possible approval, the court should order that the class members receive notice of the settlement." *Manley v. Midan Rest. Inc.,* No. 14-cv-1693-HBP, 2016 WL 1274577, at *8 (S.D.N.Y. Mar. 30, 2016) (citation omitted).

The Second Circuit has recognized a "'strong judicial policy in favor of settlements, particularly in the class action context.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("*Visa*"); *see also Hadel v. Gaucho LLC*, No. 15-cv-3706-RLE, 2016 WL 1060324, at *1 (S.D.N.Y. Mar. 14, 2016) ("Courts encourage early settlement of class actions, when warranted,

because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere."). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.42 (1995)).

As demonstrated below, the proposed Settlement warrants preliminary approval because it is procedurally and substantively fair and provides significant monetary and remedial relief.

### B. The Settlement Is Procedurally Fair

To demonstrate a settlement's procedural fairness, a party must show "that the settlement resulted from 'arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests.'" *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted); *accord McReynolds*, 588 F.3d at 804; *see also Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at *5 (E.D.N.Y. Apr. 11, 2016). First, the negotiations were conducted at arms' length over a period of many weeks. (*See* Decl. ¶ 15). The Parties participated in a full day of mediation with mediator Bennett J. Picker. Although mediation was unsuccessful, over the next several months the Parties continued to work remotely with Mr. Picker and reached an agreement in principle. (Id.). The negotiations were hard fought, and counsel for all Parties participated vigorously with competing agendas. (Id.).

The settlement discussions were undertaken by counsel who are well versed in complex litigation and, more specifically, consumer class actions. Experienced lawyers advocated for the interests of the Class throughout the negotiations, utilizing their combined, several decades experience of litigating class actions, including breach of privacy claims, to ensure the proposed Settlement serves the best interests of the Class. (*See* Joint Decl. ¶ 15).

Representative Plaintiffs and Class Counsel very thoroughly evaluated the merits of the claims and defenses, the likelihood the Court would certify the litigation for class treatment, and the likelihood of success at trial and upon appeal. (Joint Decl. at ¶ 16). As a result of this analysis, Class Counsel obtained an understanding of the strengths and weaknesses of the litigation. For the foregoing reasons, the Parties believe the Settlement Agreement is procedurally fair.

### C.      The Settlement is Substantively Fair

To demonstrate the substantive fairness of a settlement agreement, a party must satisfy the factors the Second Circuit set forth in *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974) ("*Grinnell*"). *Charron*, 731 F.3d at 247. The *Grinnell* factors have not been displaced by the 2018 amendments to Rule 23(e). *See Payment Card*, 330 F.R.D. at 29. The *Grinnell* factors are used to evaluate settlements at the final approval stage, and guide courts at the preliminary approval stage, at which Representative Plaintiffs have a lower burden. Here, each factor supports preliminary approval.

#### 1.      The complexity, expense, and likely duration of litigation

"The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) (citations omitted). Consumer class action lawsuits by their very nature are complex, expensive, and lengthy. *See, e.g.*, *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 239 (E.D.N.Y. 2010); *see also Manley*, 2016 WL 1274577, at *9 ("Most class actions are inherently complex[.]"). Should the Court decline to approve the proposed Settlement, the continuing litigation would be costly, complex, and time-consuming. There would undoubtedly be a contested class certification motion. Canon would likely argue that damages could not be calculated on a class-wide basis. Class issues involving damages would likely generate expert discovery and *Daubert* motions as well. Although Representative Plaintiffs are confident in their ultimate success in certifying a class, *see In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-

- 14 -

MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) (certifying class in a data breach case), *Smith v. Triad of Alabama, LLC*, No. 1:14-cv-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017) (same), a positive ruling would most likely be challenged by a decertification motion and/or appeal.

Representative Plaintiffs expect there would likely be a lengthy and expensive battle of the experts about reasonable steps that a business must take to protect data; whether the steps taken before and after the Data Breach were reasonable; and the reliability of competing damages models, as well as the cost attributable to a data security breach and the time spent rectifying any exposure of personal data. Each step towards trial would be subject to Canon's vigorous opposition. Even if the case were to proceed to judgment on the merits, any final judgment would likely be appealed, which would take significant time and resources.

Moreover, Canon would be expected to offer substantial defenses at trial concerning the applicability of various statutory and common law claims, including whether Settlement class members were injured and had standing, whether Defendant had a duty to preserve the security of Settlement Class Members' data, and whether any injury suffered by Settlement Class Members would be compensable under Plaintiffs' legal theories. Although Representative Plaintiffs believe they would ultimately prevail, "litigation of this matter . . . through trial would be complex, costly and long." *Manley*, 2016 WL 1274577, at *9 (citation omitted). "The settlement eliminates [the] costs and risks" associated with further litigation. *Meredith Corp.*, 87 F. Supp. 3d at 663. "It also obtains for the class prompt [] compensation for prior [] injuries." *Id.* For these reasons, this factor weighs strongly in favor of preliminary approval.

### 2.      The reaction of the class to the Settlement

This *Grinnell* factor is premature at the preliminary approval stage. *See Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006) ("Clearly, some of these [*Grinnell*] factors, particularly the reaction of the class to the settlement, are impossible to weigh

prior to notice and a hearing."). However, all of the Class Representatives approve of this proposed Settlement. Class Counsel will address this factor in the final approval papers.

### 3.   The stage of the proceedings and the amount of discovery completed

The "stage of the proceedings" factor is concerned with "whether Class Plaintiffs had sufficient information on the merits of the case to enter into a settlement agreement . . . and whether the Court has sufficient information to evaluate such a settlement." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 224 (E.D.N.Y. 2013) (citations omitted). To meet this requirement, "formal discovery need not have necessarily been undertaken yet by the parties." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) (citing *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173(RPP), 2008 WL 1956267 (S.D.N.Y. May 1, 2008)). It is appropriate for Representative Plaintiffs to enter into a settlement after "Class Counsel [has] conducted extensive investigation into the facts, circumstances, and legal issues associated with this case[,]" particularly when the case is not one "that [is] likely to turn on facts initially in Defendant's sole possession." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-cv-1113-VAB, 2016 WL 6542707, at *8 (D. Conn. Nov. 3, 2016).

Here, in addition to conducting extensive legal and factual research into the merits of their claims (and likelihood of protracted litigation), Representative Plaintiffs have filed a lengthy amended complaint; conferred with experts and provided preliminary expert analysis and reports; exchanged mediation statements and presentations; briefed Defendants' motion to dismiss; prepared and served discovery, and mediated before Mr. Picker (Decl. ¶ 17). Due to this work, the depth of Representative Plaintiffs' and Class Counsel's knowledge of the strengths and potential weaknesses of their claims are more than adequate to support the settlement.

### 4.     The risks of establishing liability and damages

"Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143(ENV)(RER), 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011) (citation omitted). "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, No. 00-cv-9806-SHS, 2007 WL 927583, at *9 (S.D.N.Y. Mar. 27, 2007) (citation omitted); *accord Zeltser v. Merrill Lynch & Co.*, No. 13-cv-1531-FM, 2014 WL 4816134, at *6 (S.D.N.Y. Sep. 23, 2014). In assessing this factor, "the Court should balance the benefits afforded the Class, including the immediacy and certainty of a recovery, against the continuing risks of litigation." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F.Supp.3d 290, 303 (E.D.N.Y 2015).

Representative Plaintiffs recognize that, as with any litigation, uncertainties exist. Canon continues to deny Representative Plaintiffs' allegations, and should this matter proceed, Representative Plaintiffs expect Canon will vigorously defend itself on the merits, at each stage of litigation and likely on appeal, as it already has in its motion to dismiss Plaintiffs' Consolidated Amended Complaint.

Most fundamentally, while Representative Plaintiffs believe that Canon had a duty to protect the security of Representative Plaintiffs' private data and breached that duty by failing to implement reasonable security measures, a jury might not agree. In addition, Representative Plaintiffs anticipate a zealous "battle of the experts" with respect to Canon's claims regarding the accessibility of the data Representative Plaintiffs allege was compromised in the Ransomware Attacks and regarding the calculations of damages. For these reasons, although Representative Plaintiffs are confident in the merits of their case, the risks of establishing liability and damages strongly support preliminary approval.

### 5.   The risk of maintaining class action status through trial

The litigation settled before a ruling on class certification, and the certification requested herein is for settlement purposes only. While Representative Plaintiffs believe that the Court would certify a litigation class, Canon would zealously oppose the motion. Representative Plaintiffs must meet the requirements, including proffering a suitable mechanism for calculating class-wide damages. While Representative Plaintiffs believe they could establish the existence of such a mechanism to the Court's satisfaction, this proposed Settlement eliminates the unavoidable risk that they could not do so. Furthermore, even if the Court were to certify a litigation class, the certification can be reviewed and modified at any time. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might not be certified is not illusory"). Given the risks, this factor weighs in favor of preliminary approval. *See, e.g.*, *Mills v. Capital One, N.A.*, No. 14-cv-1937-HBP, 2015 WL 5730008, at *6 (S.D.N.Y. Sept. 30, 2015).

### 6.   The ability of Defendant to withstand greater judgment

"[I]n any class action against a large corporation, the defendant entity is likely to be able to withstand a more substantial judgment, and against the weight of the remaining factors, this fact alone does not undermine the reasonableness of the instant settlement." *Weber v. Gov't Emps, Ins. Co.*, 262 F.R.D. 431, 447 (D.N.J. 2009). A "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Viafara v. MCIZ Corp.*, No. 12-cv-7452-RLE, 2014 WL 1777438, at *7 (S.D.N.Y. Apr. 30, 2014) (citation omitted). Further, "Courts have recognized that a [defendant's] ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving the settlement." *In re Sinus Buster Prods. Consumer Litig.*, No. 12–CV–2429 (ADS)(AKT), 2014 WL 5819921, at *11

(E.D.N.Y. Nov. 10, 2014) (citations omitted). Here, although Canon may be able to withstand a greater judgment, the financial obligations the proposed Settlement imposes on Canon are substantial. This factor weighs in favor of preliminary approval.

### 7. The range of reasonableness of the Settlement in light of the best possible recovery and attendant risks of litigation

The range-of-reasonableness factor weighs the relief provided in the settlement against the strength of the plaintiff's case, including the likelihood of recovery at trial. This factor "recognizes the uncertainties of law and fact in a particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion[.]" *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). In applying this factor, "the settlement must be judged 'not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Shapiro v. JPMorgan Chase & Co.*, No. 11-cv-8331-MHD, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (quoting *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd* 818 F.2d 145 (2d Cir. 1987)). Indeed, as recognized by the Second Circuit, because of the riskiness of litigation, "[i]n fact there is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell*, 495 F.2d at 455 n.2. "In other words, the question for the Court is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces[.]" *Bodon v. Domino's Pizza, LLC*, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015) (citation omitted).

Here, the relief for which the Settlement Agreement provides is within the range of reasonableness, especially in light of the best possible recovery and all the attendant risks of litigation. The gravamen of the litigation is Plaintiffs' contention that Canon violated its duty to Settlement Class Members by failing to undertake reasonable security measures, leading to the exposure of their personal and highly sensitive financial data. The remediation measures already undertaken by Defendant will help prevent further harm.   (Settlement Agreement ¶ 2.5).

- 19 -

Furthermore, the cash compensation to which eligible Settlement Class Members will be entitled—reimbursement of the Settlement Class Members' losses of time and money and other financial losses arising from the Data Breach—is significant relative to the economic damages incurred.

As discussed above, while Representative Plaintiffs believe their claims are strong, continuation of this litigation poses significant risks, as articulated by Canon in its motion to dismiss. Although ongoing litigation may not result in an increased benefit to the Settlement Class, it would lead to substantial expenditure of resources by both Parties and the Court. Taking into account the risks and benefits Representative Plaintiffs have outlined above, the Settlement falls within the "range of reasonableness." Thus, collectively and independently, the *Grinnell* factors warrant the conclusion that the Settlement is fair, adequate, and reasonable and provides an excellent result for the Settlement Class.

## II.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Certification of a settlement class must satisfy the requirements of Rule 23(a), as well as at least one of the provisions of Rule 23(b). *See In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229. 242 (2d Cir. 2012). When certification of a settlement class is sought, "courts must take a liberal rather than a restrictive approach." *Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157-58 (E.D.N.Y. 2009). As demonstrated below, the proposed Settlement Class satisfies all of the requirements of Rule 23(a) and Rule 23(b)(3).

### A.    The Requirements of Rule 23(a) Are Satisfied

Rule 23(a) permits an action to be maintained as a class action if (i) the class is so numerous that joinder of all members is impracticable (numerosity); (ii) there are questions of law or fact common to the class (commonality); (iii) the claims and defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (iv) the representative parties will fairly and adequately protect the interests of the class (adequate representation). Fed. R. Civ. P. 23(a). The Settlement Class meets each prerequisite of Rule 23(a).

### 1. Numerosity

Under Rule 23(a)(1), Representative Plaintiffs must show that the proposed class is "so numerous that joinder of all [its] members is impracticable." Fed. R. Civ. P. 23(a)(1). In the Second Circuit, "a proposed class of more than forty members presumptively satisfies the numerosity requirement . . . ." *Kelen v. World Fin. Network Nat. Bank*, 295 F.R.D. 87, 92 (S.D.N.Y. 2013) (collecting cases). Here, the Settlement Class is estimated to be approximately 50,000 individuals.

### 2. Commonality

Under Rule 23(a)(2), Representative Plaintiffs must show that "questions of law or fact common to the [proposed] class" exist. Fed. R. Civ. P. 23(a)(2). Commonality requires that the proposed Settlement class members' claims all centrally "depend upon a common contention," which "must be of such a nature that it is capable of class wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *WalMart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do[.]" *Id.* at 359 (citations omitted). Representative Plaintiffs need only show that their injuries stemmed from Defendant's "unitary course of conduct." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 85 (2d Cir. 2015).

Here, common questions include, but are not limited to, whether Canon had a duty to protect Settlement Class Members' data and whether Canon breached that duty. Resolution of this common question would require evaluation of the question's merits under a single objective standard; *i.e.*, "whether [Defendant] had a legal duty to adequately protect Settlement Class Members' personal information; . . . whether [Defendant] breached that legal duty; and . . . whether Plaintiffs and members of the class suffered injury as a result of [Defendant]'s failure to act." *Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc*., 2019 WL 3183651, at *3 (D. Md. July 15, 2019) (approving settlement in data breach case). Thus, commonality is satisfied.

### 3.     Typicality

Under Rule 23(a)(3), Representative Plaintiffs must show that the proposed class representatives' claims "are typical of the [class'] claims." Fed. R. Civ. P. 23(a)(3). Representative Plaintiffs must show that "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). "[D]ifferences in the degree of harm suffered, or even in the ability to prove damages, do not vitiate the typicality of a representative's claims." *In re Nissan Radiator/Transmission Cooler Litig.*, No. 10-cv-7493-VB, 2013 WL 4080946, at *19 (S.D.N.Y. May 30, 2013); *Fogarazzo v. Lehman Bros., Inc.*, 232 F.R.D. 176, 180 (S.D.N.Y. 2005) ("The typicality requirement is not demanding.").

Here, typicality is met because the same allegedly unlawful conduct by Canon was directed at, or affected, Representative Plaintiffs and the members of the proposed Settlement Class. *Robidoux*, 987 F.2d at 936–37. Each Plaintiff, like each Settlement Class Member, received a notice from Canon regarding the Data Breach. Their claims as both former and current Canon employees are typical of the class. *See In re Heartland Payment Sys., Inc. Client Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1054 (S.D. Tex. 2012) (finding typicality in data breach claim as to the settlement class "[b]ecause this claim revolves around [Defendant]'s conduct, as opposed to the characteristics of a particular class member's claim").

### 4.     Adequacy of representation

Under Rule 23(a)(4), Representative Plaintiffs must show that the proposed class representatives will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Representative Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is "qualified, experienced and generally able to conduct the litigation." *Marisol A. by Forbes v. Giuliani*, 126 F.3d 372, 378 (2d Cir. 1997). To satisfy the first requirement, Representative Plaintiffs must show that "the members

of the class possess the same interests" and that "no fundamental conflicts exist" between a class's representative(s) and its members. *Charron*, 731 F.3d at 249. Here, Representative Plaintiffs possess the same interests as the proposed Settlement Class Members because Representative Plaintiffs and the Settlement Class Members were all allegedly injured in the same manner based on the same allegedly inadequate security measures and the same data breaches.

With respect to the second requirement, in appointing class counsel, courts must consider (i) counsel's work in identifying or investigating claims; (ii) counsel's experience in handling the types of claims asserted; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A). Co-Lead Counsel possess a long and proven track record of the successful prosecution of class actions, including data breach cases, and numerous appointments as class counsel. (Decl. ¶ 17). Co-Lead Counsel have worked cooperatively and efficiently and have devoted substantial time and resources to this case. This work has included (1) investigating the Data Breach; (2) researching and evaluating the appropriate legal claims to assert; (3) interviewing Settlement class members about their experiences; (4) preparing and filing two consolidated complaints; (5) opposing the motion to dismiss; (6) preparing and serving written discovery; ( preparing mediation materials and participating in mediation sessions; and (7) negotiating the proposed settlement and preparing the settlement documentation. (Id.). Because Interim Co-Lead Counsel have demonstrated their commitment to litigating these claims, the Court should appoint them to serve as Class Counsel.

Accordingly, the requirements of Rule 23(a)(4), as well as the requirements of Rule 23(g) relating to the qualifications of Class Counsel, are satisfied.

### D.     The Requirements of Rule 23(b)(3) Are Satisfied

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). Representative Plaintiffs seek certification under Rule 23(b)(3) which

requires that "questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1. Common legal and factual questions predominate in this action

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623 (citation omitted). Predominance exists where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Second Circuit has held that "to meet the predominance requirement . . . a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *In re Nassau Cty Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006) (citations omitted). In the context of a request for settlement-only class certification, concerns about whether individual issues "would present intractable management problems" at trial drop out because "the proposal is that there be no trial." *Amchem Prods., 521 U.S.* at 620. As a result, "the predominance inquiry will sometimes be easier to satisfy in the settlement context." *Tart*, 2015 WL 5945846, at *4 (citation omitted). Courts have found similar settlement classes to meet the preponderance requirement in data breach cases. "Indeed, the focus on a defendant's security measures in a data breach class action is the precise type of predominant question that makes class-wide adjudication worthwhile." *In re Yahoo! Inc. Client Data Sec. Breach Litig.*, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (quotation marks omitted).

Here, for settlement purposes, central common questions predominate over any questions that may affect individual Settlement Class Members. The central common questions include whether Canon had a duty to the Class to prevent exposure of their private data and whether Canon took reasonable actions to prevent the Ransomware Attacks. These issues are subject to

"generalized proof" and "outweigh those issues that are subject to individualized proof." *In re Nassau Cty. Strip Search Cases*, 461 F.3d at 227–28 (citation omitted). The Settlement Class meets the predominance requirement for settlement purposes.

### 2.      A class action is the superior means to adjudicate Plaintiffs' claims

Rule 23(b)(3) also requires Representative Plaintiffs to show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the class action mechanism is superior to individual actions for numerous reasons. First, "[t]he potential class members are both significant in number and geographically dispersed" and "[t]he interest of the class as a whole in litigating the many common questions substantially outweighs any interest by individual members in bringing and prosecuting separate actions." *Meredith Corp.*, 87 F. Supp. 3d at 661 (citation omitted).

Additionally, a class action is superior here because "it will conserve judicial resources" and "is more efficient for Class Members, particularly those who lack the resources to bring their claims individually." *Zeltser*, 2014 WL 4816134, at *3 (citation omitted). As a result of the uncertainty of the cost to each class member of the potential exposure of their data, the expense and burden of litigation make it virtually impossible for the Settlement Class Members to seek redress on an individual basis. By contrast, in a class action, the cost of litigation is spread across the entire class, thereby making litigation and recovery economically viable. *See, e.g.*, *Tart*, 2015 WL 5945846, at *5. "Employing the class device here will not only achieve economies of scale for Class Members but will also conserve judicial resources and preserve public confidence in the integrity of the system by avoiding the waste and delay repetitive proceedings and preventing inconsistent adjudications." *Zeltser*, 2014 WL 4816134, at *3 (citations omitted). For all of the foregoing reasons, a class action is superior to individual suits. [2]

---

[2]      Granting preliminary approval of this Settlement and Settlement Class is consistent with rulings in other data breach security cases from districts across the United States. *See, e.g.*, *In re Yahoo! Inc. Client Data Sec. Breach Litig.*,

The requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, and the Court should preliminarily certify the Settlement Class.

## III.     THE COURT SHOULD APPROVE THE PROPOSED NOTICE PLAN

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.312 (2004). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Visa*, 396 F.3d at 113 (citations omitted); *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983). The Court has broad power over approving procedures to use for providing notice so long as the procedures are consistent with the standards of reasonableness imposed under the due process clauses in the U.S. Constitution. *Handschu v. Special Services Div.*, 787 F.2d 828, 833 (2d Cir. 1986) ("[T]he district court has virtually complete discretion as to the manner of giving notice to class members."). Courts "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Capital One Fin. Advisors*, 559 Fed.Appx. 22, at *26 (2d Cir. 2014) (summary order).

Here, the proposed Notice Plan--outlined in the Settlement Agreement and Declaration of Cameron Azari—and related forms of notice meet the requirements of due process and Rule

---

2020 WL 4212811 (N.D. Cal. July 22, 2020); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018); *In re The Home Depot, Inc., Client Data Sec. Breach Litig.*, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016); *In re Target Corp. Client Data Sec. Breach Litig.*, 2017 WL 2178306 (D. Minn. May 17, 2017); *Cotter v. Checkers Drive-In Restaurants, Inc.*, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021); *In re Equifax Inc. Client Data Sec. Breach Litig.*, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *aff'd in relevant part*, 999 F.3d 1247, 1281-82 (11th Cir. 2021); *In re Banner Health Data Breach Litig.*, 2020 WL 12574227 (D. Ariz. Apr. 21, 2020); *In re Premera Blue Cross Client Data Sec. Breach Litig.*, 2019 WL 3410382 (D. Or. Jul. 29, 2019); *In re Countrywide Financial Corp. Client Data Sec. Breach Litig.*, 2010 WL 3341200 (W.D. Ky. Aug. 23. 2010); *In re Heartland Payment Systems, Inc. Client Data Sec. Breach Litig.*, 851 F.Supp.2d 1040 (S.D. Tex. 2012); *In re Sonic Corp. Client Data Sec. Breach Litig.*, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019); *In re Sony Gaming Networks and Client Data Sec. Breach Litig.*, 2014 WL 7800046 (S.D. Cal. Jul. 10, 2014).

23(e)(1)(B). Notice shall be disseminated via First Class U.S. mail, postage prepaid, to all Settlement Class Members. (Settlement Agreement ¶3 ).

These proposed method for providing notice is reasonable, given that it identifies the Settlement Class Members with precision and Canon has contact information for the vast majority of the Settlement Class Members. (Id.). The Supreme Court has consistently found that direct notice satisfies the requirements of due process. *See, e.g.*, *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 319 (1950). This notice will reach far beyond the minimum number of Settlement class members who must be reached in settlements. *See* Federal Judicial Center, JUDGES' CLASS ACTION NOTICE AND CLAIMS PROCESS CHECKLIST AND PLAIN LANGUAGE GUIDE (2010) at 3 ("It is reasonable to reach between 70-95%. A study of recent published decisions showed that the median reach calculation on approved notice plans was 87%"); Federal Judicial Center, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES (3d Ed. 2010) at 27 (explaining the "reach" of a proposed class action notice plan is normally within a range of 70-95%). Direct notice through mail and email will reach every, or nearly every, member of the class.

Substantively, Rule 23(c)(2)(B) requires, and the Notices of Settlement provide, information, written in easy-to-understand plain language, regarding: "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who timely requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart Stores*, 396 F.3d at 114. The Notices of Settlement define the Settlement Class; explain all Settlement Class

Members' rights, the scope and impact of Released Claims, and the applicable deadlines for submitting claims, objecting, and opting out; and describe in detail the monetary relief provided by the Settlement, including the procedures for allocating and distributing the Settlement Fund amongst the Settlement Class Members, Plaintiffs, and Class Counsel. They also plainly indicate the time and place of the final approval hearing, and explain the methods for objecting to, or opting out of the Settlement. They also provide contact information for Class Counsel. (*See* Settlement Agreement Ex. 4a and 4b).

Moreover, the Court should approve the administrator to implement the notice plan and administer the benefits of the Settlement and the claims of Settlement Class Members.  After due consideration, the Parties have selected Epiq Class Action & Claims Solution to serve as the notice and claims administrator. Epiq is an extremely well-regarded notice and claims administrator and has extensive experience in cases of the type here. (Ex. C)

### A.    The Court Should Schedule a Fairness Hearing and Approve the Proposed Preliminary Approval Order

Finally, the Court should schedule a final approval hearing to decide whether to grant final approval to the Settlement, address Class Counsel's request for attorneys' fees, expenses and  a service award for the Class Representatives, consider any objections and exclusions,  and determine whether to dismiss this action with prejudice. *See* MANUAL FOR  COMPLEX LITIG. (FOURTH) § 21.634 (2011). Representative Plaintiffs respectfully request that the final approval hearing be scheduled for 75 days after the commencement of the Notice Program.

Toward these ends, the Parties have provided the Court with a proposed order that provides for the following schedule:

| Event | Date |
|---|---|
| **Canon Provides CAFA Notice required by 28 U.S.C. § 1715(b)** | Within 10 days after the filing of Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement |

| Event | Date |
|---|---|
| **Canon Provides Notice to Class Counsel and the Court of Compliance with CAFA Requirements** | Within 10 days of providing notice to Appropriate Governmental Officials under CAFA |
| **Class Notice Program Commences** | Within 30 days after entry of this Preliminary Approval Order |
| **Compliance with CAFA Waiting Period under 28 U.S.C. § 1715(d)** | 90 days after the Appropriate Governmental Officials are Served with CAFA Notice |
| **Motion for Attorneys' Fees, Reimbursement of Costs and Expenses, and Service Awards to be Filed by Class Counsel** | At least 21 days before the Objection Deadline |
| **Postmark Deadline for requests for Exclusion (Opt-Out) or Objections** | 120 days after Commencement of Notice Program |
| **Postmark/Filing Deadline for Filing Claims** | 120 days after Completion of Notice Program |
| **Motion for Final Approval to be Filed by Class Counsel** | At least 14 days before the Final Approval Hearing |
| **Final Approval Hearing** | No earlier than 145 days after Completion of Notice Program |

## VI. CONCLUSION

For the foregoing reasons, Representative Plaintiffs respectfully request that this Court grant Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement and enter the Preliminary Approval Order.

Dated: February 2, 2023

Respectfully submitted,

/s/ *Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, LLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
gklinger@milberg.com

Gary S. Graifman
Melissa R. Emert
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: (845) 356-2570 / Fax: (845) 356-4335
ggraifman@kgglaw.com
memert@kgglaw.com

Amanda Peterson (AP1797)
**MORGAN & MORGAN**
90 Broad Street, Suite 1011
New York, NY 10004
(212) 564-4568
apeterson@ForThePeople.com

John A. Yanchunis
Ryan D. Maxey
**MORGAN & MORGAN COMPLEX
BUSINESS DIVISION**
201 N. Franklin Street, 7th Floor
Tampa, Florida 33602
(813) 223-5505
jyanchunis@ForThePeople.com
rmaxey@ForThePeople.com

M. Anderson Berry
**CLAYEO C. ARNOLD,
A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
(916) 777-7777
aberry@justice4you.com

Lori G. Feldman, Esq.
**GEORGE GESTEN MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
Email: LFeldman@4-justice.com
E-Service: eService@4-Justice.com

David J. George, Esq.
Brittany L. Brown, Esq.
**GEORGE GESTEN MCDONALD, PLLC**
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-Justice.com
E-Service: eService@4-Justice.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certified that on February 2, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

*/s/ Gary M. Klinger*