**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: CANON U.S.A. DATA BREACH LITIGATION<br><br>This Document Related To:<br><br>All Actions | **Case No. 1:20-CV-06239-AMD-SJB** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    **INTRODUCTION**

On November 15, 2023, this Court preliminarily approved the Class Action Settlement Agreement reached by Class Representatives Michael Finnigan, Kenneth Buchbinder, Brian McCartney, Tyrone Villacis, Luis Pichardo, Andrew Hamid, Amy Lynn Hamid, Woodrow Moss, and Diana Rouse ("Class Representatives" or "Plaintiffs") and Defendants Canon U.S.A., Inc., Canon Solutions America, Inc., Canon Software America, Inc., Canon Information and Imaging Solutions, Inc., Canon Financial Services, Inc., Canon Medical Components U.S.A., Inc., Canon Information Technology Services, Inc., and NT-ware USA, Inc. (collectively, "Canon" or "Defendants") relating to a Data Security Incident. (ECF No. 66.) To address the potential for harm caused by the Data Security Incident, Plaintiffs and Class Counsel negotiated a settlement that provides direct monetary benefits to the Settlement Class and will help protect them against future identity theft.

The Settlement provides four (4) types of key benefits: (1) "Ordinary Expense Reimbursement" for documented out-of-pocket losses that were incurred between August 4, 2020 and the date of the Settlement Agreement, if plausibly caused by the Data Incident, not to exceed $300 per Settlement Class Member, which includes compensation for up to 4 hours of lost time reimbursable at a rate of $20 per hour[1]; (2) "Extraordinary Expense Reimbursement", not to exceed $7,500 per Settlement Class Member, for monetary out-of-pocket losses that were plausibly caused

---

[1] Ordinary expense reimbursements include: (i) cost to obtain credit reports; (ii) fees relating to a credit freeze; (iii) card replacement fees; (iv) late fees; (v) overlimit fees; (vi) interest on payday loans taken as a result of the Data Incident; (vii) other bank or credit card fees; (viii) postage, mileage, and other incidental expenses resulting from lack of access to an existing account; (ix) costs associated with credit monitoring or identity theft insurance purchased prior to the Effective Date of the Settlement, if purchased primarily as a result of the Data Incident; and (x) compensation for attested-to lost time spent monitoring accounts, reversing fraudulent charges, or otherwise dealing with the aftermath/cleanup of the Data Incident, at a rate of $20 for up to four (4) hours. Settlement Agreement, ¶ 2.1.

by the Data Incident[2]; (3) two years of Credit Monitoring and Identity Protection, which includes three bureau credit monitoring and alerts, provided they indicate such request on the Claim Form; and (4) several data security changes and improvements undertaken by Canon.[3] Settlement Agreement, § 2.

In addition, Canon will pay all costs of Notice and Settlement Administration and attorneys' fees and costs, and Service Awards as approved by the Court, separate and apart from the funds provided to claimants.[4]

After preliminary approval by this Court, the Settlement Class Notice was sent to Settlement Class Members, including current and former employees of Defendant and their beneficiaries and dependents, who meet the class definition. As of April 11, 2024 the settlement website has received 2,941 unique visitors with over 11,000 web pages having been presented. Declaration of Cameron R. Azari, Esq. on Implementation and Adequacy of Notice Plan and Notices ("Azari Decl."), ¶ 17. Furthermore, while the Claims process is ongoing, with the deadline

---

[2] Extraordinary Expenses are out-of-pocket losses that were (a) actual, documented, and unreimbursed; (b) caused by the Data Incident; (c) incurred during the time period from August 4, 2020, through the date of the Settlement Agreement; (d) not an amount already covered by one or more of the categories for "Ordinary Expense Reimbursement"; (e) incurred despite the claimant's reasonable efforts to avoid, or seek reimbursement for the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. Settlement Agreement, ¶ 2.2.

[3] Specifically, Canon agreed to maintain at a minimum, for a period of one (1) year following final approval of the settlement, enhanced security practices and procedures that were implemented following the Data Incident, including deployment of endpoint detection and response tools to its servers and workstations; engagement of a third-party security operations center to provide constant monitoring of its network; a local administrator password vault solution; and multifactor authentication and application control for access to domain controllers. Settlement Agreement, ¶ 2.5.

[4] The Parties did not discuss the payment of attorneys' fees, costs, and/or expenses until after the substantive terms of the settlement had been agreed upon, other than that Canon would pay reasonable attorneys' fees, costs, expenses as may be agreed to by Canon and Interim Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court. SA, ¶ 7.2.

to file a claim being April 15, 2024, so far, as of April 11, 2024, the Settlement Administrator has received 1,264 Claim Forms. *Id.*, ¶ 22. Additionally, with the Objection/Exclusion deadline only days away on April 15, 2024, zero Settlement Class Members have objected to the Settlement Agreement, and only two out of more than 41,905 Class Members submitted a request to exclude themselves. *Id.*, ¶¶ 11, 20. The positive reaction of the class illustrates the fairness of the proposed Settlement Agreement.

Accordingly, Plaintiffs now respectfully request that the Court grant final approval of the Settlement Agreement. In a separate previously filed motion, Plaintiffs requested the Court approve a Service Award to the Class Representatives in the amount of $1,000 each, and also approve an award of $600,000 in attorneys' fees and $17,985.58 in litigation expenses.[5]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Data Security Incident and the Subsequent Lawsuits

This litigation arises from a ransomware attack suffered by Canon on or about August 4, 2020 that possibly resulted in the unauthorized access of personally identifiable information ("PII") of Plaintiffs and Class Members, who are employees and their beneficiaries and dependents of Defendant (the "Data Breach"). On August 6, 2020, Canon announced the Data Breach to its employees. Compl. ¶ 5. On November 24, 2020, after a preliminary investigation, Canon mailed a "Notice of Data Breach" to those employees who worked for Canon from 2005-2020, as well as their beneficiaries and dependents who may have been affected. *See* Compl. ¶ 6. Canon's Notice of Data Breach informed the relevant individuals that their information may have been exposed to unauthorized activity and that the information at issue included certain names, Social Security numbers, driver's license numbers or government-issued identification numbers, financial account

---

[5] Defendants support the within Motion for final approval of the settlement, but have opposed the amount of attorneys' fees being sought in a separate motion.  ECF 70.

numbers provided for direct deposit, electronic signatures, and dates of birth (the PII). Compl. ¶ 7. The Notice of Data Breach also provided one-year of free credit monitoring. *See* Compl. Ex. A, Notice of Data Breach.

After Canon provided notice of the Data Breach, beginning on or around November 24, 2020, three (3) separate class action complaints were filed in the Eastern District of New York.[6] Those cases were all deemed related and on January 25, 2021, the cases were consolidated. ECF 9.

On January 28, 2021, Representative Plaintiffs filed a motion for the appointment of interim class counsel. ECF 12. On March 9, 2021, the Court entered an Order Appointing Interim Co-Lead Class Counsel and Executive Committee ("Interim Class Counsel"). ECF 19.

On April 23, 2021, a Consolidated Class Action Complaint was filed. ECF 22 (the "Complaint"). On July 12, 2022, Canon filed a Motion to Dismiss the Complaint. ECF 27-28. On August 2, 2022, Representative Plaintiffs filed a Consolidated Amended Class Action Complaint (the "Amended Complaint"). ECF 30. On August 25, 2022, Canon filed a Motion to Dismiss the Amended Complaint (the "Motion"). ECF 31-32. On March 15, 2022, United States District Judge Ann M. Donnelly issued a Memorandum Decision and Order denying in part and granting in part the Motion to Dismiss. ECF 40.

On April 12, 2022, Canon timely filed an Answer to the remaining allegations and claims in the Amended Complaint. ECF 43. On April 19, 2022, the Parties appeared for a status conference before the Honorable Sanket J. Bulsara, U.S.M.J. pursuant to an Order entered by Judge Bulsara, the Parties advised the Court on May 6, 2022 that they would participate in private

---

[6] Those actions were: (1) *Finnegan, et al. v. Canon U.S.A., Inc.*, 1:20-cv-06239-AMD-SJB; (2) *Hamid v. Canon U.S.A., Inc. et al.*, No. 1:20-cv-06380-AMD-SJB; and (3) *Rouse, et al. v. Canon U.S.A., Inc.*, No. 2:21-cv-004140-SJF-ARL.

mediation. ECF 46.

On March 15, 2022, the Court entered a Memorandum Decision and Order (ECF No. 40) finding Plaintiffs had Article III standing to bring their claims. *Id*. at 5-9. In their letter to the Court dated June 1, 2023 (ECF No. 59), Plaintiffs further elaborated on why they have standing under the Second Circuit's framework set forth in *McMorris v. Carlos Lopez & Assocs.*, LLC, 995 F.3d 295, 299 (2d Cir. 2021).[7] Plaintiffs contend this Court's finding of standing is consistent with the Eleventh Circuit's standing analysis in *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247 (11th Cir. 2021), where the court stated as follows:

> The actual identity theft already suffered by some Plaintiffs further demonstrates the risk of identity theft all Plaintiffs face—though actual identity theft is by no means required when there is a sufficient risk of identity theft...Beyond the sufficient risk of identity theft and resulting injuries, a vast number of Plaintiffs who have not yet suffered identity theft also allege they have spent time, money, and effort mitigating the risk of identity theft. Their efforts include purchasing credit freezes, monitoring their financial accounts, and purchasing credit monitoring, among other things. As explained above, because the risk of harm here is a sufficient injury, the allegations of mitigation injuries made by these Plaintiffs are also sufficient.

*Id*. at 1262. Plaintiffs further note that the Central District of California has similarly recognized standing, as follows:

> [T]he majority of authority indicates that it is improper for this Court to analyze unnamed class members' Article III standing where, as here, Defendants do not successfully challenge the putative class representative's standing. *See Lewis v. Casey,* 518 U.S. 343, 395, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (Souter, J., concurring) (class certification "does not require a demonstration that some or all of the unnamed class could themselves satisfy the standing requirements for named plaintiffs."). As the Ninth Circuit observed in *Stearns,* this Circuit has repeatedly held that "[i]n a class action, standing is satisfied if at least one named plaintiff meets the requirements.... Thus, we consider only whether at least one named plaintiff satisfies the standing requirements." *See Stearns v. Ticketmaster Corp.,* 655 F.3d 1013, 1021 (9th Cir.2011) (quoting *Bates v. United Parcel Serv., Inc.,* 511

---

[7] Although Plaintiffs understand that Canon does not necessarily agree with this finding, the Parties nevertheless agree that Judge Donnelly's decision on standing is sufficient for Plaintiffs to enter into a settlement on behalf of the proposed settlement class.

F.3d 974, 985 (9th Cir.2007) (en banc)). Other district courts in California routinely reach the same conclusion to hold that standing "is assessed solely with respect to class representatives, not unnamed members of the class."

*Bruno v. Quten Rsch. Inst.*, LLC, 280 F.R.D. 524, 532 (C.D. Cal. 2011).

On June 22, 2022, the Parties participated in a full-day mediation with Mediator Bennett G. Picker, a well-respected mediator experienced in mediating cases of this type. Although the Parties did not settle the case during this mediation session, over the next few months they continued to discuss resolution with the help of the Mediator. Subsequently the Parties reached an agreement in principle and, on January 25, 2023, memorialized the terms in the original Settlement Agreement. ECF 54-2. On February 2, 2023, Plaintiffs submitted an Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF 54.

On March 23, 2023 the Parties participated in a conference before the Honorable Sanket J. Bulsara, U.S.M.J. regarding the preliminary approval of the settlement wherein the Court denied the motion without prejudice and asked the parties to address certain issues and points of clarification. As a result, the Parties participated in further negotiations, participated in a second conference before Judge Bulsara on June 7, 2023, and, on June 29, 2023 executed the attached Amended Settlement Agreement ("Settlement Agreement" or "S.A.").

On July 7, 2023, the Plaintiffs filed an Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement (ECF 61-62) requesting preliminary approval of the Settlement Agreement. On September 11, 2023, the Court issued an Order directing the parties to address the fairness of the class action settlement pursuant to the standards set forth in *Moses v. N.Y. Times Co.*, No 21-2556, 2023 WL 5281138 (2d Cir. Aug. 17, 2023). Specifically, the Court asked the parties to address the reasonableness of any award of attorneys' fees and whether the proposal treats class members equitably relative to each other. On September 25, 2023, the parties

submitted a Joint Memorandum of Law in Response to the Court's September 11, 2023 Order Regarding Motion for Preliminary Approval of Settlement (ECF 65) addressing both issues. This Court subsequently issued an order granting preliminary approval of the Settlement Agreement on November 15, 2023. ECF 66.

The Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Canon and the Released Persons relating to the Data Breach, by and on behalf of the Class Representatives and Settlement Class Members and any other such actions by and on behalf of any other persons in the United States and relating to the Data Breach.

**B.     The Parties Reached a Fair, Arms-Length Settlement**

Throughout the case, the Parties have engaged in talks about the case and possible settlement options. To facilitate their settlement negotiations, the Parties agreed to use experienced mediator Bennett G. Picker. *See* Declaration of Gary M. Klinger ("Klinger Decl."), at ¶ 7. Mr. Picker has extensive experience in class action mediation, including privacy litigation. *Id.*. On June 22, 2022, the Parties attended a full day mediation session with Mr. Picker. While the Parties made some progress, several key factual and legal issues remained in dispute. *Id.* For the next several weeks, the Parties continued to engage in the mediation process with the efforts of Mr. Picker. *Id.*. Ultimately the Parties reached an agreement in principle (*id.*), after which the Parties began drafting and finalizing the Settlement, Notice and Claim Forms, and drafting the motion for preliminary approval for presentment to the Court. After the Court raised certain issues with the original Settlement and Unopposed Motion for Preliminary Approval of Class Action Settlement on March 23, 2023, the Parties engaged in further negotiations which led to their agreements memorialized in the operative Settlement Agreement, executed on June 29, 2023. (*See* Letter to the Court dated June 1, 2023, ECF No. 59).

The settlement discussions spanned several months and included exchanging information about the Data Breach, potential damages, Canon's business practices relating to privacy and data security, and the experiences of Plaintiffs. Klinger Decl.", at ¶ 7. The result is a proposed Settlement Agreement that was reached at arm's length and without collusion. *Id.*, at ¶ 20.

Under the terms of the Settlement Agreement, there are four (4) different remedies being provided to Settlement Class Members: (1) "Ordinary Expense Reimbursement" for documented out-of-pocket losses that were incurred between August 4, 2020 and the date of this Settlement Agreement, if plausibly caused by the Data Incident, not to exceed $300 per Settlement Class Member[8]; (2) "Extraordinary Expense Reimbursement", not to exceed $7,500 per Settlement Class Member, for monetary out-of-pocket losses that were plausibly caused by the Data Incident;[9] (3) two years of Credit Monitoring and Identity Protection, which includes three bureau credit monitoring and alerts, provided they indicate such request on the Claim Form; and (4) several data security changes and improvements undertaken by Canon.[10] Settlement Agreement, § 2.

---

[8] Ordinary expense reimbursements include: (i) cost to obtain credit reports; (ii) fees relating to a credit freeze; (iii) card replacement fees; (iv) late fees; (v) overlimit fees; (vi) interest on payday loans taken as a result of the Data Incident; (vii) other bank or credit card fees; (viii) postage, mileage, and other incidental expenses resulting from lack of access to an existing account; (ix) costs associated with credit monitoring or identity theft insurance purchased prior to the Effective Date of the Settlement, if purchased primarily as a result of the Data Incident; and (x) compensation for attested-to lost time spent monitoring accounts, reversing fraudulent charges, or otherwise dealing with the aftermath/cleanup of the Data Incident, at a rate of $20 for up to four (4) hours. SA, ¶ 2.1.

[9] Extraordinary Expenses are out-of-pocket losses that were (a) actual, documented, and unreimbursed; (b) caused by the Data Incident; (c) incurred during the time period from August 4, 2020, through the date of the Settlement Agreement; (d) not an amount already covered by one or more of the categories for "Ordinary Expense Reimbursement"; (e) incurred despite the claimant's reasonable efforts to avoid, or seek reimbursement for the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance. Settlement Agreement, ¶ 2.2.

[10] Specifically, Canon agreed to maintain at a minimum, for a period of one (1) year following final approval of the settlement, enhanced security practices and procedures that were implemented following the Data Incident, including deployment of endpoint detection and response tools to its

The Credit Monitoring Package and Identity Protection is provided by Epiq. These protections are available to all Settlement Class Members who file a claim requesting them, even where no claim for reimbursement losses is claimed.

Furthermore, the Settlement Agreement provides that Canon will pay all costs of Notice and Settlement Administration, attorneys fees and costs as ordered by the Court, and any Service Awards approved by the Court—separate and apart from the funds provided to valid claimants.

### C.     Preliminary Approval

As noted above, this Court granted preliminary approval to the settlement on November 15, 2023. (ECF 66). The Court ruled that "the relief is within the range of resolutions that can be considered fair and reasonable to Class Members: individuals who suffered minimal harm receive minimal compensation, while those suffering greater harm from the data breach receive greater, if not complete, compensation. And all Class Members are entitled to some relief for the breach, in the form of two free years of credit monitoring services, paid for by Canon." *Id*.

The Settlement Class in the preliminary approval order was defined as "all individuals residing in the United States who received the Notice of Data Breach from Canon regarding the Data Incident dated November 24, 2020." *Id*. The Court also appointed the Class Representatives identified previously, and appointed John Yanchunis, Esq. of Morgan & Morgan Complex Litigation Group and Gary M. Klinger, Esq. of Milberg Coleman Bryson Phillips Grossman LLC as Lead Class Counsel, and Lori Feldman, Esq. of George Feldman McDonald, PLLC (f/k/a George Gesten McDonald, PLLC) as additional Class Counsel. *Id*. The Court additionally appointed Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the Claims Administrator and

---

servers and workstations; engagement of a third-party security operations center to provide constant monitoring of its network; a local administrator password vault solution; and multifactor authentication and application control for access to domain controllers. SA, ¶ 2.5.

approved the proposed Class Notice program. *Id*. Finally, the Court scheduled a Final Approval Hearing for this matter for April 25, 2024 at 2:30 p.m. *Id*.

### D.    Attorneys' Fees and Service Awards

In addition to the settlement terms set forth above, the Parties agreed to a Service Award to the Class Representatives in the amount of $1,000 each. The Parties have not reached an agreement on the amount of attorneys' fees, costs and expenses to be paid to Interim Class Counsel. As set forth in the Settlement Agreement, Canon agreed to "pay reasonable attorneys' fees, costs, expenses as may be agreed to by Canon and Interim Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court." SA, ¶ 7.2. Payment of the Service Award and attorneys' fees, costs and expenses is separate from the benefits provided to the settlement class and will not affect the potential recovery of the Settlement Class. Klinger Decl., ¶ 29. The details explaining the justifications for the fee and service awards are details in the previously filed Motion for Fee Award, Litigation Costs, and Service Awards. ECF 69. Canon also agreed to pay all Settlement Administrator fees and expenses.

### E.    Class Notice

The details of the Class Notice Program are set forth in the attached Azari Decl. *See* Azari Decl., ¶¶ 11-15. To summarize, on December 15, 2023, Epiq sent via USPS first-class mail 41,905 Postcard Notices to identified Settlement Class Members for whom an associated physical mailing address was available. *Id*. at ¶ 12. Prior to sending the Postcard Notice all mailing addresses were checked against the National Change of Address data base, as well as through other data bases, to make sure the most accurate addresses were used. *Id*. at ¶ 13. Notices returned as undeliverable were remailed after better addresses were found. *Id*. at ¶ 14. Additionally, Epiq mailed a Long Form Notice and Claim Form packages to all 30 persons who requested one via the toll-free telephone number or other means. *Id*. at ¶ 15.

As of March 22, 2024, a Postcard Notice was delivered to 40,406 of the 41,905, unique, identified Settlement Class Members. This means the individual notice efforts reached approximately 96.4% of the identified Settlement Class Members. *Id.* at ¶ 16.

On December 14, 2023, Epiq established an informational Settlement Website at www.CanonClaimsSettlement.com. *Id.* at ¶ 17. The website allows Settlement Class Members to obtain detailed information about the case and review all the relevant case-related documents. The Settlement Website also includes relevant dates, answers to frequently asked questions, instructions for how Settlement Class Members are able to opt-out (request exclusion) from or object to the Settlement, contact information for the Settlement Administrator, and how to obtain other case-related information. Settlement Class Members are also able to file a Claim Form on the Settlement Website. *Id.* As of April 11, 2024 there have been 2,941 unique visitor sessions to the settlement website, and  11,549 web pages have been presented. *Id.*

On December 14, 2023, Epiq established a toll-free telephone number (1-888-970-5658) to allow Settlement Class Members to call for additional information and listen to answers to FAQs. *Id.* at ¶ 18. This automated phone system is available 24 hours per day, 7 days per week. In addition, callers have the option to leave a voice message and receive a call back from a live agent during normal business hours. As of April 11, 2024, the toll-free number has handled 259 calls to the toll-free telephone number representing 1,480 minutes of use, and service agents have handled 137 incoming calls and 9 outbound calls representing 1,370 minutes of use. *Id.*

The deadline for Settlement Class Members to file a Claim Form is April 15, 2024. But as of April 11, 2024, Epiq has received 1,264 Claim Forms (1,257 online and 7 paper) for about a 3% claims rate as of that date. *Id.* at ¶ 22. It is expected that additional claims will be filed by Settlement Class Members before the expiration of the deadline. *Id.* at ¶ 23. Additionally, as of the filing of

this Motion, Epiq has received two requests to opt out of the Settlement and no objections. *Id.*, ¶ 20.

## III.    __ARGUMENT__

### A.    **Legal Standard for Final Approval of a Class Action Settlement**

A district court may approve a settlement proposal that binds class members "after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). There is a "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re Painewebber Ltd. Partnerships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)) (internal quotation marks omitted). Thus, courts examine both procedural and substantive fairness in light of that strong judicial policy. *See Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 52 (W.D.N.Y. 2018) ("Settlements are strongly favored as a matter of policy, because, '[b]y lessening docket congestion, settlements make it possible for the judicial system to operate more efficiently and more fairly while affording plaintiffs an opportunity to obtain relief at an earlier time.") (internal quotations omitted); *Springer v. Code Rebel Corp.*, No. 16-CV-3492 (AJN), 2018 WL 1773137, at *7 (S.D.N.Y. Apr. 10, 2018) (same*); Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Under current Second Circuit precedent, the Court should not presume that the settlement was "fair, reasonable, and adequate because it was reached in an arm's-length negotiation[,]" but instead should examine the settlement in light of the factors set forth in Federal Rule of Civil Procedure 23(e)(2). *Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). Those factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate,

taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement. *Moses*, 79 F.4th at 243, citing Fed. R. Civ. P. 23(e)(2) Advisory Committee's Note to 2018 Amendment.

Courts evaluating the fairness, reasonableness, and adequacy of a proposed settlement must consider these four factors "holistically, taking into account – among other substantive considerations stated in the rule – the proposed attorneys' fees and incentive awards." *Moses*, 79 F.4th at 243. These factors do not completely displace the prior framework set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000), known as the "*Grinell* factors,"[11] but the new terms in Rule 23(e)(2) prevail over any prior analysis that is inconsistent with its requirements. *Moses*, 79 F.4th at 243.

This Court has considered and granted preliminary approval of class certification. ECF No. 66. As Plaintiffs set forth in their Renewed Motion for Preliminary Approval, the proposed

---

[11]  Those factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Hyland v. Navient Corp.*, 48 F.4th 110, 121 (2d Cir. 2022).

Settlement Class satisfies all of the requirements of Rules 23(a) and 23(b)(3). The class still meets the requirements of numerosity, commonality, typicality, and adequacy, and because common issues predominate and a class action is the superior means by which to resolve class member claims, the Court should finally certify the Settlement Class for settlement purposes.

**B.     The Settlement Administrator's Notice Program Satisfied Due Process As Well As Rule 23**

To satisfy due process, notice to class members must be the best practicable, and reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(e); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Notice provided to the class must be sufficient to allow class members "a full and fair opportunity to consider the proposed decree and develop a response." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950). While individual notice should be provided where class members can be located and identified through reasonable effort, notice may also be provided by U.S. Mail, electronic, or other appropriate means. Fed. R. Civ. P. 23(c)(2)(B); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 702 (S.D.N.Y. 2019) ("The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness.").

Here, the content of the Notice adequately informed Settlement Class Members of the nature of the action, the definition of the class, the claims at issue, the ability of a class member to object or exclude themselves or to appear through an attorney, and the binding effect of final approval and class judgment. The Notice used clear and concise language that is easy to understand, and the Notice is organized in a way that allowed Class Members to easily find any section that they may be looking for. Thus, it was substantively adequate. *See Torres v. Gristede's Operating Corp.*, No. 04-CV-3316 (PAC), 2010 WL 2572937, at *3 (S.D.N.Y. June 1,

2010) ("The Notice is appropriate because it describes the terms of the settlement and provides specific information regarding the date, time, and place of the final approval hearing.").

Moreover, the Settlement Administrator—with the assistance of the Parties—has taken all necessary measures to ensure notice reached as many of the Settlement Class Members as possible. Such notice complies with the program approved by this Court in its Preliminary Approval Order, is consistent with Notice Programs approved in the Second Circuit and across the United States, is considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Fed.Jud.Ctr., "*Managing Class Action Litigation: A Pocket Guide or Judges*", 27 (3d Ed. 2010) *see also, Cicciarella v. Califia Farms, LLC*, No. 7:19-CV-08785-CS, 2020 WL 1320866 (S.D.N.Y. Mar. 20, 2020) (approving notice that was projected to reach 70% of class members).

### C.    The Settlement Terms Are Fair, Adequate, and Reasonable, and Warrant Final Approval

#### 1.    *The Class Representatives and Class Counsel Have Adequately Represented the Class*

Rule 23(e)(2)(A) requires a Court determine whether "the class representatives and class counsel have adequately represented the class" before approving a settlement. "Determination of adequacy typically entails inquiry as to whether: (1) plaintiffs' interests are antagonistic to the interest of other members of the class and (2) plaintiffs' attorneys are qualified, experienced and able to conduct the litigation." *In re GSE Bonds Antitrust Litigation*, 414 F. Supp. 3d at 692, quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotations omitted). Both factors are satisfied in this case.

There are no conflicts or antagonistic interests here. Plaintiffs have assisted Class Counsel by providing documents, reviewing pleadings, keeping in contact with counsel, remaining available for consultation throughout the settlement negotiations and answering counsel's many

questions and approving the Settlement terms. *See* Klinger Decl., ¶_33. Plaintiffs do not have any conflict with the proposed Settlement Class and have adequately represented them in litigation and in bringing this case to successful resolution with significant benefits available to the Settlement Class. Specifically, Plaintiffs are a part of the same Settlement Class, suffered the same range of injury, have the same interest in in protecting their private information from disclosure, and as discussed in accompanying motion for fees, seek only modest Service Awards compared with those sought by plaintiffs in other class actions.

Class Counsel has also adequately represented the Class. Indeed, considering this Court granted in part Canon's Motion to Dismiss, the Settlement later obtained is a positive result for the Class. In negotiating the Settlement Agreement, Class Counsel had the benefit of years of experience and familiarity with the factual and legal bases for this case, as well as other cases involving data breaches and consumer privacy. This understanding of the intricacies of the data breach and consumer privacy issues provided Class Counsel with the tools and perspective to achieve an excellent recovery for the Class—and prepared Class Counsel to litigate this Action to a successful conclusion if necessary.

2.    *The Settlement was Negotiated at Arm's Length*

Here, both Parties were represented by counsel experienced in class action and data breach litigation. The settlement discussions and negotiations were protracted and hard-fought over a number of months during and after the mediation. There is no question that the Parties stood at arm's-length throughout these settlement negotiations.

3.    *The Monetary Relief Provided for the Settlement Class is Adequate*

The monetary relief provided by the Settlement Agreement here compares favorably with relief provided in other similar data breach cases approved by Courts across the United States. *See, e.g., In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472 (PKC), 2022

WL 2063864 (S.D.N.Y. June 8, 2022) (granting final approval to settlement in data breach case providing $30 for transaction costs and time spent responding to the breach and reimbursement for documented out-of-pocket expenses incurred as a result of the breach up to a maximum of $5000); *McFarlane v. Altice*, No. 1:20-cv-01297 (S.D.N.Y. Oct. 7, 2022) (granting final approval to data breach settlement providing (i) reimbursement of Out-of-Pocket Expenses of up to $3,000 per Settlement Class Member; and (ii) reimbursement of each Settlement Class Member for up to three hours of attested Time Spent responding to the Data Security Incident at a rate of $25.00 an hour; and (iii) a credit monitoring and identity theft package); *Baksh v. Ivy Rehab Network, Inc*., No. 7:20-cv-01845 (S.D.N.Y. Jan. 27, 2021) (providing up to $75 per class member for out-of-pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancement); *In re: GE/CBPS Data Breach Litig.*, No. 1:20-cv-02903 (S.D.N.Y., Mar. 3, 2023) (granting final approval to data breach settlement providing (1) cash reimbursement for out-of-pocket losses incurred, up to $3500; (2) compensation for lost time (up to four hours of lost time reimbursable at a rate of $18 an hour) spent mitigating the effects of the Data Security Incident; and (3) eighteen months of Credit Monitoring Protections).

When, as here, a settlement "assures immediate payment of substantial amounts to class members, even if it means sacrificing 'speculative payment of a hypothetically larger amount years down the road, a settlement is reasonable under this factor." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-CV-05669 BMC, 2012 WL 5874655, at *5 (E.D.N.Y. Nov. 20, 2012) (citations omitted).

### 4.   The Costs, Risks, and Delay of Trial and Appeal Weigh in Favor of Final Approval

In this case, the relief to the Settlement Class is more than adequate in light of the costs,

risks, and time required to litigate this action through trial and appeal. "Litigation inherently involves risks." *Willix v. Healthfirst, Inc.*, No. 07 CIV. 1143 ENV RER, 2011 WL 754862, at *11 (E.D.N.Y. Feb. 18, 2011). "[I]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Banyai v. Mazur*, No. 00 CIV.9806 SHS, 2007 WL 927583, at *30 (S.D.N.Y. Mar. 27, 2007); *accord Zeltser v. Merrill Lynch & Co.*, No. 13 CIV. 1531 FM, 2014 WL 4816134, at *14 (S.D.N.Y. Sept. 23, 2014). "The greater the 'complexity, expense and likely duration of the litigation,' the stronger the basis for approving a settlement." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015).

This case is no different. Data breach cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of New York Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). As one federal district court recently observed in finally approving a settlement with similar class relief: "Data breach litigation is evolving; there is no guarantee of the ultimate result." *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-CV-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019); *see also Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach cases ... are particularly risky, expensive, and complex.").

To the extent the law is adapting to this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, cybersecurity cases are among the riskiest and uncertain of all class action litigation, making settlement the prudent course if possible. The damage calculation methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any cybersecurity incident case, establishing causation on a

class-wide basis is rife with uncertainty. *See, e.g.*, *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 31–33 (D. Me. 2013).

Class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g.*, *In re Hannaford,* 293 F.R.D. at 35. Further, if Plaintiffs are successful in obtaining certification of a litigation class, the certification would not be set in stone. *Long v. HSBC USA Inc.*, No. 14 CIV. 6233 HBP, 2015 WL 5444651, at *11 (S.D.N.Y. Sept. 11, 2015) ("A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed. R. Civ. P. 23(f) or a motion to decertify by defendants, requiring additional briefing."). Plaintiffs would likely face several strong legal defenses and difficulties in demonstrating causation and injury. Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and putative class members. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal any decision on either certification or merits. Considering the risks, costs, and potential delays inherent in litigating this class action to judgment, this factor weighs heavily in favor of final approval. *See Babcock v. C. Tech Collections, Inc.*, No. 1:14-CV-3124 (MDG), 2017 WL 1155767 (E.D.N.Y. Mar. 27, 2017) (class settlement "eliminates the risk, expense, and delay inherent in the litigation process.")

While Plaintiffs are confident in the strength of their claims, they are also pragmatic in their awareness of the various defenses available to Canon, as well as the risks inherent to continued litigation. Canon consistently denied the allegations raised by Plaintiffs and made clear at the outset that it would vigorously defend the case. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all. This weighs strongly in favor of final approval.

5. <u>*The Terms of the Proposed Award of Attorneys' Fees Weighs in Favor of Final Approval*</u>

The Settlement Agreement provides that Defendant will pay Class Counsel's reasonable attorneys' fees, costs, expenses as may be agreed to by Canon and Interim Class Counsel and/or as ordered by the Court, or in the event of no agreement, then as ordered by the Court. SA ¶ 7.2. On March 15, 2024, Plaintiffs moved for an award of attorneys' fees, reimbursement of expenses, and for Service Awards. As explained in the moving papers for that motion, the requested fees and reimbursement of expenses are fair and reasonable. Likewise, the Service Awards sought for the Class Representatives are modest and are another factor that weighs in favor of final approval.

6. <u>*There are no Agreements Required to be Identified Under Rule 23(e)(3)*</u>

Apart from that contained in the Settlement Agreement, there are no additional agreements between the Parties or side agreements with others made in connection with the Settlement. Klinger Decl. ¶ 17. Accordingly, this factor weighs in favor of final approval of the Settlement.

7. <u>*The Settlement Treats Class Members Equitably Relative to Each Other*</u>

As described above, each Settlement Class Member may make a Claim for the same Ordinary and Extraordinary Expense reimbursements, and the credit monitoring and identity protection. Additionally, any Settlement Class Member, even if they do not submit a claim for the out-of-pocket or lost time monetary benefits of the settlement who felt he/she had a more valuable Claim had the opportunity to opt-out of the Settlement and pursue it. *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831-MHH, 2019 WL 9171207, at *12 (N.D. Ala. Aug. 1, 2019) (finding settlement class members' ability to exclude themselves from a settlement shows equitable treatment and weighing it in favor of final approval).

**D.    The Settlement Also Warrants Approval Under the *Grinell* Factors.**

Although the *Grinell* factors are no longer dispositive of the issues involved in final

approval of a class action settlement, they remain relevant considerations. *Moses*, 79 F.4th at 243. Here, those factors also support final approval of the Settlement Agreement and the settlement reached herein.

> **Grinnell Factor 1: The complexity, expense, and likely duration of litigation weighs in favor of final approval.**

The costs, risks, and delay of continued litigation weigh in favor of settlement approval. As explained above, the risks Plaintiffs faced in this litigation are substantial and cannot be disregarded. There are risks attendant to every case, that Plaintiffs could lose their case at class certification or trial. Even after incurring substantial litigation costs, including those related to multiple experts, Plaintiffs and the Settlement Class Members still might not achieve a result that provides comparable benefits to the instant settlement. Protracted and ongoing litigation would only serve to increase costs and have a potentially negative affect on Class recovery, which is itself far from certain. "Complex litigation . . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Woodward v. NOR-AM Chem. Co.*, No. CIV. 94-0780-CB-C, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996). Where a settlement, like here, "will alleviate the need for judicial exploration of . . . complex subjects [and] reduce litigation costs" this factor weighs in favor of approval. *See Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

> **Grinnell Factor 2: Class reaction signals approval of the Settlement Agreement.**

Courts have deemed that the reaction of a class to settlement is "perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); Fed. R. Civ. P. 23(e). Here, only one Settlement Class Members opted out, and none have objected. Azari Decl., ¶ 20. This demonstrates overwhelming support that is a clear signal of the Settlement Class Members' approval of the Settlement.

The lack of class member objections "may Itself be taken as evidencing the fairness of a settlement." *RMED Int'l, Inc. v. Sloa's Supermarkets, Inc.*, No. 94 CIV. 5587(PKL)(RL), 2003 WL 21136726, at *1 (S.D.N.Y. May 15, 2003); *see also Wal-Mart Stores, Inc.*, 396 F.3d 96 (affirming approval of class action settlement with 18 merchant objectors). Here, the reaction of the class to date has been overwhelmingly positive. There have been no objections and only two exclusions to date with over 1,200 claims having been made already. This factor weighs in favor of approval of the Settlement.

**Grinnell Factor 3: The stage of litigation and discovery completed favors final approval.**

Courts encourage the efficient resolution of class actions where warranted. Early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *Diaz v. E. Locating Serv. Inc.*, No. 1:10-CV-04082-JCF, 2010 WL 5507912, at *3 (S.D.N.Y. Nov. 29, 2010) (granting final approval of pre-suit class settlement in wage and hour case); *In re Interpublic Sec. Litig.*, No. 02 CIV.6527(DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case). The central question often considered by courts in examining the stage of litigation is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). Here, the Parties were well aware of the risks of continued litigation. As stated previously, Class Counsel is experienced in class action and data breach litigation. The Settlement was also only reached after extensive investigation, gathering information from the named Plaintiffs, motion practice, and adversarial mediation. Thus, the timing of the settlement is appropriate, and this factor weighs in favor of approval.

**Grinnell Factors 4, 5, and 6: The risks of establishing liability, damages, and maintaining a class action through trial weigh in favor of final approval.**

Although Plaintiffs believe in the merits of the case at the outset, continued litigation involves significant risk. *See In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Id. quoting In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 CIV. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005)) (noting "there are always risks in proceeding to trial and these risks are compounded by virtue of the nature of class action litigation."). In weighing the risks of establishing liability and damages, the court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 177 (S.D.N.Y. 2000) (internal quotation marks omitted).

As noted above, continued litigation would involve extensive motion practice, including the need for Plaintiffs to both gain and maintain class certification. This is far from a certain proposition in data breach litigation. Instead of facing the uncertainty of a potential award in their favor years from now, the Settlement allows Plaintiffs and Settlement Class Members to receive immediate and certain relief. *See, e.g.*, *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation.") (citation omitted).

> ### *Grinnell* Factor 7: The ability of the Defendant to withstand a greater judgment is not at issue here.

Canon has not provided any evidence demonstrating it could not withstand a greater judgment here. However, even if it could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (*quoting In re Austrian and German Bank Holocaust Litigation*, 80 F. Supp. 2d at 178 n.9). Thus, this factor

is neutral and does not preclude the Court from granting final approval.

**Grinnell Factors 8 and 9: The Settlement provides for substantial relief for the Settlement Class, especially in light of all attendant risks of litigation.**

As discussed above, the Settlement guarantees Settlement Class Members real relief for their injuries and provides significant protection for every Class Member by way of the Credit Monitoring and Identity Protection package. The value achieved through the Settlement Agreement is guaranteed, whereas the chances of prevailing on the merits are uncertain. Plaintiffs understand that even were they to prevail on the appeal, Defendant will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open Plaintiffs to the risks inherent in trying to achieve and maintain class certification and prove liability—both factors considered under the test for final approval established by *Grinnell*.

This Settlement is the product of adversarial, yet professional, extended negotiations. As described herein, it compares favorably with many other similar case settlements. Thus, the Settlement is worthy of final approval for the reasons set forth above. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

## IV.        CONCLUSION

Plaintiffs have negotiated a fair, reasonable, and adequate Settlement that guarantees Settlement Class Members who make a claim significant relief in the form of cost reimbursements, credit monitoring and identity protections, and equitable relief consisting of increased data security safeguards. The Settlement Agreement was reached only after extensive arm's-length negotiations, and an assessment of both the Grinnell factors and the revised Rule 23 factors weighs in favor of Final Approval. For the reasons discussed above, and for those described in Plaintiffs' Unopposed Renewed Motion for Preliminary Approval of Class Action Settlement and Plaintiffs' Motion for

Fee Award, Litigation Costs, and Service Awards, Plaintiffs respectfully request this Court enter the proposed Final Approval Order filed herewith, finally certify the Settlement Class, appoint Settlement Class Counsel and Plaintiffs as representatives for the Settlement Class, award Plaintiffs service awards in the amount of $1,000.00 for each Class Representative, grant Settlement Class Counsel's motion for attorneys' fees and reimbursement of expenses, and grant final approval of this Settlement.

Dated: April 11, 2024                    Respectfully submitted,


                                         /s/ *John A. Yanchunis*
                                         Gary M. Klinger
                                         **MILBERG COLEMAN BRYSON**
                                         **PHILLIPS GROSSMAN, PLLC**
                                         227 W. Monroe Street, Suite 2100
                                         Chicago, IL 60606
                                         Tel: 866.252.0878
                                         gklinger@milberg.com

                                         Gary S. Graifman
                                         Melissa R. Emert
                                         **KANTROWITZ, GOLDHAMER &**
                                         **GRAIFMAN, P.C.**
                                         747 Chestnut Ridge Road
                                         Chestnut Ridge, New York 10977
                                         Tel: (845) 356-2570 / Fax: (845) 356-4335
                                         ggraifman@kgglaw.com
                                         memert@kgglaw.com

                                         John A. Yanchunis
                                         **MORGAN & MORGAN COMPLEX**
                                         **BUSINESS DIVISION**
                                         201 N. Franklin Street, 7th Floor
                                         Tampa, Florida 33602
                                         (813) 223-5505
                                         jyanchunis@ForThePeople.com

                                         M. Anderson Berry
                                         **CLAYEO C. ARNOLD**
                                         **A PROFESSIONAL CORPORATION**
                                         865 Howe Avenue

Sacramento, CA 95825
(916) 777-7777
aberry@justice4you.com

Lori G. Feldman, Esq.
**GEORGE GESTEN MCDONALD, PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
Email: LFeldman@4-justice.com
E-Service: eService@4-Justice.com

David J. George, Esq.
Brittany L. Brown, Esq.
**GEORGE GESTEN MCDONALD, PLLC**
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Phone: (561) 232-6002
Email: DGeorge@4-Justice.com
E-Service: eService@4-Justice.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certified that on April 11, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

<u>/s/ <em>John A. Yanchunis</em>            </u>
