UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE: CANON U.S.A. DATA BREACH
LITIGATON

          **MEMORANDUM AND
ORDER**
20-CV-6239-AMD-SJB
20-CV-6380-AMD-SJB
21-CV-414-AMD-SJB

-----------------------------------------------------------x
**BULSARA, United States Magistrate Judge:**

On November 15, 2023, this Court granted preliminary approval of the settlement in this data breach class action. *In re Canon U.S.A. Data Breach Litig.*, No. 20-CV-6239, 2023 WL 7936207 (E.D.N.Y. Nov. 15, 2023). The Honorable Ann M. Donnelly held a final approval hearing, (Minute Entry dated Apr. 25, 2024), and granted the motion for final approval, (Final Approval Order & J. dated May 9, 2024, Dkt. No. 77). On March 15, 2024, Plaintiffs' counsel filed the present motion for attorney's fees, incentive awards, and costs. (Mot. for Att'y's Fees dated Mar. 15, 2024, Dkt. No. 69). Defendants oppose only the attorney's fees portion of the motion. As explained herein, the Court grants the fee application and the unopposed relief for costs and incentive awards in full.

<u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]</u>

In 2020, Plaintiffs filed this data breach class action against Canon U.S.A., Inc., Canon Solutions America, Inc., Canon Software America, Inc., Canon Information and Imaging Solutions, Inc., Canon Financial Services, Inc., Canon Medical Components U.S.A., Inc., Canon Information Technology Services, Inc., and NT-ware USA, Inc.

---

[1] Plaintiffs' allegations are recounted in detail in the Court's preliminary approval order. *Canon*, 2023 WL 7936207, at *1–*5.

(collectively, the "Defendants" or "Canon"), alleging that they failed to properly secure and safeguard Plaintiffs' personally identifiable information. *Canon*, 2023 WL 7936207, at *1. Plaintiffs are former and current employees of Canon whose information was allegedly compromised during intrusions into Canon's network between July 20 and August 6, 2020 (the "Data Breach"). *Id.*

After employees received notice of the Data Breach from Canon, three separate class action complaints were filed in this District by four law firms.[2] The cases were consolidated on January 25, 2021, and the Court appointed interim class counsel on March 9, 2021. (*See* Dkt. Nos. 9, 19). On April 23, 2021, Plaintiffs' counsel filed a Consolidated Class Action Complaint, (Consolidated Am. Compl., Dkt. No. 22), which is the operative pleading. Defendants moved to dismiss the case in full, and on March 15, 2022, Judge Donnelly granted the motion in part and denied it in part. *In re Canon U.S.A. Data Breach Litig.*, No. 20-CV-6239, 2022 WL 22248656, at *14 (E.D.N.Y. Mar. 15, 2022). In relevant part, Judge Donnelly dismissed some of Plaintiffs' negligence, breach of confidence, and statutory unfair competition claims, but denied the motion as to some of Plaintiffs' breach of implied contract and third-party beneficiary claims. *Id.* Judge Donnelly also affirmed that the Plaintiffs had standing. *Id.* at *3–*6.

The parties agreed to participate in private mediation with Bennett J. Picker. (Mem. of Law in Supp. of Pls.' Mot. for Att'ys' Fees ("Pls.' Mem. of Law"), Dkt. No. 69-1

---

[2] The four law firms—Mason Lietz & Klinger LLP ("MLK"), George Feldman McDonald, PLLC ("GFM"), Morgan & Morgan, and the Arnold Law Firm—filed the complaints on behalf of nine plaintiffs: Michael Finnigan, Kenneth Buchbinder, Brian McCartney, Tyrone Villacis, Luis Pichardo, Andrew Hamid, Amy Lynn Hamid, Woodrow Moss, and Diana Rouse (collectively, the "Named Plaintiffs"). Later, the attorneys from MLK left that firm and joined Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg"), which continued litigating the case.

at 5).  After attending a full-day mediation session, the parties continued engaging in negotiations over the next several weeks, before reaching a settlement.  (*Id.*).  The operative settlement agreement was memorialized on June 29, 2023 (the "Settlement Agreement").  (Am. Settlement Agreement dated June 29, 2021 ("Settlement Agreement"), Dkt. No. 61-1).

The settlement covers a class of "all individuals residing in the United States who received the Notice of Data Breach from Canon regarding the Data [Breach] dated November 24, 2020" (the "Settlement Class").  *Canon*, 2023 WL 7936207, at *3.  They were eligible for both equitable and monetary relief, including reimbursements of up to $300 for an "Ordinary Expense" and up to $7,500 for an "Extraordinary Expense."  *Id.* at *4.  The monetary relief available to class members is not capped: Canon agreed to pay all valid claims submitted.  (*See* Settlement Agreement ¶¶ 2.1–2.2).  Each class member is also eligible for two years of free credit monitoring services.  *Canon*, 2023 WL 7936207, at *4.  And Canon also agreed to maintain, for a minimum of one year following final approval, "enhanced security practices and procedures" to protect their employees' personal data.  (Settlement Agreement ¶ 2.5).

Under the terms of the Settlement Agreement, Canon agreed to pay "reasonable attorneys' fees, costs, [and] expenses," determined by the Court in a fee application.  (*Id.* ¶¶ 7.2–7.3).  In addition, Canon agreed to pay an incentive award to each Named Plaintiff of $1,000 each, or in an amount determined by the Court.  (*Id.* ¶ 7.1).  Canon agreed to pay the fees, costs, and incentive awards separately, and in addition to amounts paid to class members, meaning that any award stemming from this Court's order does not diminish the class recovery.  (*Id.* ¶ 7.2); *see Canon*, 2023 WL 7936207, at *5.

Plaintiffs now seek an award of $626,985.58, consisting of $600,000 in attorney's fees, $17,985.58 in costs, and $9,000 in incentive awards, based upon $1,000 for each Named Plaintiff.  (*See* Pls.' Mem. of Law at 25).

DISCUSSION

As noted, the only dispute is about the amount of attorney's fees.  And that dispute boils down to a dispute about methodology—how the Court should go about determining a "reasonable fee" for the results achieved in the class settlement.  Plaintiffs argue that the Court should use a percentage-of-recovery method to determine the fee award.  (*Id.* at 9–10).  Plaintiffs contend that a "conservative" estimate of $2,233,199 is appropriate for the total value of the settlement, consisting of an anticipated 5% participation of the cash payments (totaling $630,000), an anticipated 10% participation of the credit monitoring (totaling $907,200), $95,999 in claims administration costs, and the requested $600,000 in attorney's fees.  (*Id.* at 12).  Under that calculation, the fees would constitute 21.1% of the total amount paid by Defendants.

Defendants contend that a $600,000 fee award is "not commensurate with the actual value of the settlement," and separately, the request is based on inflated and duplicative hours.  (Defs.' Mem. of Law in Opp'n to Pls.' Mot. for Att'ys' Fees ("Defs.' Opp'n"), Dkt. No. 70 at 7).  As an alternative, Defendants argue that the Court should use a lodestar method to calculate a reasonable fee, because it is more appropriate for the "claims-made" nature of the settlement here.  (*Id.* at 3).[3]

---

[3] Defendants take no position on Plaintiffs' application for $17,985.58 in costs, and they affirmatively agree to pay the $1,000 per Named Plaintiff incentive award.  (*Id.* at 1 n.1).

I.      Attorney's Fees

Rule 23(h) provides that "the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  In a class action settlement, a court "must examine whether the attorneys' fees arrangement shortchanges the class."  *Moses v. N.Y. Times Co.*, 79 F.4th 235, 244 (2d Cir. 2023) (quoting *Briseño v. Henderson*, 998 F.3d 1014, 1024 (9th Cir. 2021)).  "[T]he relief actually delivered to the class can be a significant factor in determining the appropriate fee award."  *Id.* (quoting Fed. R. Civ. P. 23(e)(3) advisory committee's note to 2018 amendment).

Under the percentage-of-recovery method, "the court calculates the fee award as some percentage of the funds made available to the Settlement Class."  *Hesse v. Godiva Chocolatier*, No. 19-CV-972, 2022 U.S. Dist. LEXIS 72641, at *33 (S.D.N.Y. Apr. 20, 2022) (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007)).  Under the lodestar method, the court "scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate."  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).[4]  Any fee "may not exceed what is reasonable under the circumstances," *id.* (quotations omitted), to "prevent unwarranted windfalls for attorneys."  *Id.* at 49.

---

[4] Even when a court chooses to use the percentage-of-recovery method, it will often undertake a lodestar "cross check" of the reasonableness of the fee.  *See Goldberger*, 209 F.3d at 50 ("[T]he lodestar remains useful as a baseline even if the percentage method is eventually chosen.  Indeed, we encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage.").

District courts are guided by six *Goldberger* factors in determining reasonableness: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Rosenfeld v. Lenich*, No. 18-CV-6720, 2022 WL 2093028, at *3 (E.D.N.Y. Jan. 19, 2022) (quoting *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 433 (S.D.N.Y. 2016)); *see Goldberger*, 209 F.3d at 50.

The core disagreement here is whether the percentage approach is affected by the nature of the settlement, and specifically, whether the percentage should be calculated as a portion of the monies made available to class members or instead the monies actually claimed by class members.  (*See* Pls.' Mem. of Law at 11–14; Defs.' Opp'n at 4–7).

In *Masters v. Wilhelmina Model Agency, Inc.*, the Second Circuit held that because an "entire" settlement fund "is created through the efforts of counsel at the instigation of the entire class," the "allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, *whether claimed or not.*"  473 F.3d 423, 437 (2d Cir. 2007) (emphasis added).  Defendants contend that *Masters* does not apply where the result is an inflated fee, or in a claims-made settlement, and only to those cases where a segregated pool of money (an actual "fund") for settlement exists.  (Defs.' Opp'n at 4–7); *e.g.*, *Parker v. Time Warner Ent. Co., L.P.*, 631 F. Supp. 2d 242, 265 (E.D.N.Y. 2009) ("In the typical common fund case such as *Masters*, there is an actual fund, or at least a fixed amount of money representing the extent of the defendant's liability.  Here, the Settlement Agreement establishes neither; it simply provides that Time Warner will satisfy those claims that are made by eligible class

6

members, while retaining any unclaimed benefits."), *aff'd sub nom. Lobur v. Parker*, 378 F. App'x 63, 65 (2d Cir. 2010); *Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941, 2015 WL 3889577, at *5 (E.D.N.Y. June 4, 2015) ("The Second Circuit's award of a percentage of the entire recovery in *Masters* does not, however, mean that plaintiffs' counsel are entitled to a percentage of a *hypothetical* recovery.") (collecting cases), *report and recommendation adopted*, 2015 WL 3902405, at *1 (June 24, 2015); *see also Zink v. First Niagra Bank, N.A.*, No. 13-CV-1076, 2016 WL 7473278, at *8 (W.D.N.Y. Dec. 29, 2016) (finding *Masters* is applicable to a claims-made settlement).

The debate is interesting.  But it is academic.  For one thing, this is not a "common fund" settlement for which a percentage-of-recovery approach would apply.  A typical "common fund" settlement involves a defendant setting aside a maximum pool of money to be paid to class members.  *E.g.*, *In re Holocaust Victim Assets Litig.*, 424 F.3d 150, 156–57 (2d Cir. 2005) ("Under the common fund doctrine, a party that secured a fund for the benefit of others, in addition to himself, may recover his costs, including his attorney's fees, from the fund itself or directly from the other parties enjoying the benefit." (quotations omitted)); *see also, e.g.*, *Parker*, 631 F. Supp. 2d at 265.  That is not the structure here.  (A "claims-made" settlement involves a defendant paying the full amount of claims submitted by class members, and often is subject to a cap).  And, importantly, for the purposes of understanding the impact of a fee award, a "common fund settlement" pays attorneys from monies which otherwise would be paid to class members.  *See, e.g.*, *Moses*, 79 F.4th at 246 ("Indeed, there is effectively an inverse correlation between the amount of attorneys' fees . . . awarded and the cash available for *pro rata* distribution to class members that opt for cash.").  That is not the case here either, since any fee award—under the Settlement Agreement—is paid independently

from amounts paid to class members.  Both sides assume, but do not demonstrate, that

the settlement here is a "common fund" settlement—under which a percentage of fund

approach to calculating fees could be used.  But "[t]he common fund doctrine does not

apply"—and therefore neither would the percentage approach to calculate a reasonable

fee—"when fees are sought from the assets of the losing party, and the fee award would

not come from a common fund nor be assessed against persons who have derived

benefit from the lawsuit." *Savoie v. Merchants Bank*, 84 F.3d 52, 56 (2d Cir. 1996); *see

also Green v. City of New York*, No. 05-CV-429, 2009 WL 3063059, at *6 (E.D.N.Y.

Sept. 21, 2009) ("Under [the common fund] doctrine, a court uses its jurisdiction over

the fund generated by the litigation to prevent this inequity by assessing attorney's fees

against the entire fund, thus spreading fees proportionately among those benefitted by

the suit.").  For a class settlement where fees are not paid from a common fund, do not

detract from class recovery, and are paid because of a contractual provision, the Court's

inquiry is a more relaxed reasonableness analysis. *McBean v. City of New York*, 233

F.R.D. 377, 392 (S.D.N.Y. 2006) ("This case is therefore different from other class action

settlements, where the incentives of the class members and the attorneys diverge on the

issue of attorneys' fees.  If money paid to the attorneys comes from a common fund, and

is therefore money taken from the class, then the Court must carefully review the award

to protect the interests of the absent class members.  If, however, money paid to the

attorneys is entirely independent of money awarded to the class, the Court's fiduciary

role in overseeing the award is greatly reduced, because there is no conflict of interest

between attorneys and class members." (citations omitted)); Fed. R. Civ. P. 23(h) ("In a

certified class action, the court may award reasonable attorney's fees and nontaxable

costs that are authorized by law or by the parties' agreement.").  And in doing that

analysis, the Court can simply use the lodestar method.  *E.g.*, *Jermyn v. Best Buy Stores, L.P.*, No. 08-CV-214, 2012 WL 2505644, at *9 (S.D.N.Y. June 27, 2012).

(Even assuming that this were a common fund settlement, the Court is not compelled to use the percentage approach and can simply apply the lodestar.  *Allen v. Taylor*, 795 F. App'x 79, 80 (2d Cir. 2020) ("It is up to the district court, rather than counsel, to choose whether to use the lodestar or percentage methods. . . . [W]e have held that it is within a district court's discretion to use the lodestar method alone[.]"); *Masters*, 473 F.3d at 436 ("[C]ourts may continue to use the lodestar approach alone in calculating attorneys fees in common fund cases."); *Goldberger*, 209 F.3d at 50 ("The district court's use of the lodestar method in this case was a permissible exercise of its discretion.").  Indeed, that is the approach the Defendants ask the Court to use.  (Defs.' Opp'n at 6–7.)

As explained below, in applying the lodestar method, the Court finds that Plaintiffs' calculated lodestar is inflated.  However, the Court nevertheless finds that a $600,000 fee award is reasonable.

A.    Lodestar

"The "starting point" for determining a reasonable attorney's fee is calculation of the "lodestar," which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case."  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  When assessing whether legal fees are reasonable, the Court determines the "presumptively reasonable fee" for an attorney's services by examining what reasonable clients would be willing to pay.  *See Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008).  To calculate the presumptively reasonable fee, a court must first determine a reasonable

hourly rate for the legal services performed.  *Id.*  The next step is to determine the reasonableness of the hours expended by counsel.  *See, e.g.*, *LaBarbera v. Empire State Trucking, Inc.*, No. 07-CV-669, 2008 WL 746490, at *9 (E.D.N.Y. Feb. 26, 2008), *report and recommendation adopted*, 2008 U.S. Dist. LEXIS 21770, at *3 (Mar. 17, 2008).  The number of hours spent on a lawsuit are considered unreasonable if they are excessive, redundant, or unnecessary.  *See, e.g.*, *LaBarbera v. Frank J. Batchelder Transp. LLC*, No. 08-CV-3387, 2009 WL 240521, at *4 (E.D.N.Y. Feb. 2, 2009) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)) (adopting report and recommendation).  "District courts have broad discretion, using their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of each component of a fee award."  *Finkel v. Captre Elec. Supply Co.*, No. 14-CV-3584, 2015 WL 5316257, at *5 (E.D.N.Y. July 31, 2015) (quotations omitted), *report and recommendation adopted*, 2015 WL 5330388, at *1 (Sept. 11, 2015).

Plaintiffs' counsel provided hours billed by each attorney at the five firms that worked on the case.  (*See* Decl. of Gary M. Klinger ("Klinger Decl."), Dkt. No. 69-2 ¶¶ 44, 46; Decl. of Lori G. Feldman ("Feldman Decl."), Dkt. No. 69-3 ¶ 5; Decl. of John A. Yanchunis ("Yanchunis Decl."), Dkt. No. 69-4 ¶ 14; Decl. of M. Anderson Berry ("Berry Decl."), Dkt. No. 69-5 ¶ 5).  Counsel offered to provide detailed records for *in camera* inspection, (Pls.' Reply in Supp. of Pls.' Mot. for Att'y's Fees ("Pls.' Reply"), Dkt. No. 73 at 1); however, the Court finds the information provided sufficient to evaluate the fee (and Defendants' arguments in opposition), and a line-by-line review of billing records is unnecessary.  *See, e.g.*, *Cassese v. Williams*, 503 F. App'x 55, 58 (2d Cir. 2012); *Cruz v. Loc. Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) ("Local Union No. 3 claims that attorneys fees should not have been awarded herein

because, *inter alia*, Davis & Eisenberg did not submit actual contemporaneous time records, but instead submitted a typed listing of their hours from their computer records.  This argument is unpersuasive.  A review of the submissions made by Davis & Eisenberg shows that they made contemporaneous entries as the work was completed, and that their billing was based on these contemporaneous records.”); *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407, 2023 WL 8072507, at *5 (E.D.N.Y. Nov. 21, 2023) (“In lieu of submitting contemporaneous time records themselves, the Second Circuit explained, in *Cruz* . . . that an attorney declaration summarizing time records may suffice[.]” (citing *Cruz*, 34 F.3d at 1160)).

     i.   <u>Hourly Rate</u>

Turning first to the reasonable hourly rate, the Court first examines the experience and qualifications of counsel seeking fees.  In determining the lodestar, courts “should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee.” *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotations omitted).  “[I]n complex matters, courts [in recent cases] have awarded rates that have ranged from approximately $375 to $630 for partners, $200 to $400 for associates, and $100 to $125 for paralegals.” *Alcon Vision*, 2023 WL 8072507, at *7 (collecting cases); *see Kurtz v. Kimberly-Clark Corp.*, No. 14-CV-1142, 2024 WL 184375, at *14 (E.D.N.Y. Jan. 17, 2024) (collecting cases).[5]  “Law clerks are generally awarded rates similar to those of

_____

[5] “Notably, ‘[t]he rates awarded in complex matters are higher than the typical prevailing rates for attorneys in the [Eastern District of New York], which are approximately $300 [to] $450 per hour for partners, $200 [to] $300 per hour for senior associates, and $100 [to] $200 per hour for junior associates.’” *Kurtz*, 2024 WL 184375, at *14 (alterations in original) (quoting *Alcon Vision*, 2023 WL 8072507, at *7).

paralegals." *Zhong Fa Qin v. Sensation Neo Shanghai Cuisine, Inc.*, No. 15-CV-6399, 2018 WL 5456653, at *9 (E.D.N.Y. Aug. 9, 2018) (quotations omitted), *report and recommendation adopted as modified*, 2018 WL 4853041, at *3 (Oct. 4, 2018).

"The burden is on the party moving for attorney's fees to justify the hourly rates sought." *Brown v. Green 317 Madison, LLC*, No. 11-CV-4466, 2014 WL 1237448, at *5 (E.D.N.Y. Feb. 4, 2014) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)), *report and recommendation adopted*, 2014 WL 1237127, at *1 (Mar. 25, 2014).  That is, "the fee applicant [has the burden] to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)); *see also Farbotko v. Clinton County*, 433 F.3d 204, 208 (2d Cir. 2005) ("The relevant community . . . is the district in which the court sits.").

Plaintiffs' counsel calculate their lodestar of $753,879.10 based on 934.2 hours of work, conducted by five firms, 18 attorneys, and 16 legal support staff.  (Pls.' Mem. of Law at 2, 15; *see* Defs.' Opp'n at 10).  Under their calculations, the requested of fee of $600,000 is a negative 0.8 multiplier from their lodestar.  (Pls.' Mem. of Law at 2). However, as Defendants have correctly recognized, (Defs.' Opp'n at 8–9), the amounts are excessive.  Almost every single one of counsel's requested billing rates is above the average range in this District.  For instance, David K. Lietz, Gary M. Klinger, and John J. Nelson—all partners at Milberg—request $919, $850, and $468 per hour, respectively. (Klinger Decl. ¶ 46).  But only Mr. Nelson's rate of $468 is within the usual range of $375 to $630 for partners in complex matters.  *See Alcon Vision*, 2023 WL 8072507, at *7.  In another instance, four paralegals at Milberg request rates of either $208 or $225

per hour, (Klinger Decl. ¶ 46), even though the accepted range for support staff in complex matters is between $100 and $125. *See, e.g.*, *Alcon Vision*, 2023 WL 8072507, at *7.

Counsel has provided details about the qualifications and experiences of some of these attorneys and paralegals, (*see* GFM Firm Background, attached as Ex. A to Feldman Decl., Dkt. No. 69-3; Morgan & Morgan Firm Background, attached as Ex. A to Yanchunis Decl., Dkt. No. 69-4; Arnold Law Firm Background, attached as Ex. A to Berry Decl., Dkt. No. 69-5), but they failed to include information about the extent of their individual contributions to the case. Although counsel is skilled and experienced, they have provided no compelling justification to award an hourly rate higher than the range typically given to similar professionals in other complex cases. *See, e.g.*, *NAACP v. E. Ramapo Cent. Sch. Dist.*, No. 17-CV-8943, 2020 WL 7706783, at *5 (S.D.N.Y. Dec. 29, 2020) ("[W]here a prevailing party fails to provide biographical information on an attorney for whom fees are sought, courts have discretion to lower the requested rate for purposes of the lodestar calculation and award fees at the lower end of the prevailing range.") (collecting cases), *report and recommendation adopted*, Order (Mar. 30, 2021); *ACE Ltd. v. CIGNA Corp.*, No. 00-CV-9423, 2001 WL 1286247, at *6 (S.D.N.Y. Oct. 22, 2001) ("CIGNA's failure to produce adequate information regarding its attorneys' and paraprofessionals' rates alone justifies a reduction in fees.") (collecting cases). As a result, the Court uses a different hourly rate in calculating the lodestar, as reflected in the chart below. *See infra* at p. 18.

      ii.    <u>Hours Expended</u>

Turning to the reasonableness of time expended, courts look to the "contemporaneous time records" of the attorney. The Second Circuit requires that "any

attorney . . . who applies for court-ordered compensation in this Circuit . . . document the application with contemporaneous time records." *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).  Those records "should specify, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* To be contemporaneous, the time records "must be made . . . while the work is being done or . . . immediately thereafter." *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 249 (S.D.N.Y. 2010).

Counsel submitted four declarations summarizing the time records for legal services rendered by five law firms.  (*See* Klinger Decl. ¶¶ 44, 46; Feldman Decl. ¶ 5; Yanchunis Decl. ¶ 14; Berry Decl. ¶ 5).[6]  Attorneys and legal support staff spent a combined total of 934.2 hours on this litigation.  (Pls.' Mem. of Law at 15).  As far as complex data breach class actions go, approximately 1,000 hours in total is not, by any means, unusually high or excessive given the stage of the resolution.  *See, e.g.*, *Rodriguez v. CPI Aerostructures, Inc.*, No. 20-CV-982, 2023 WL 2184496, at *13–*14 (E.D.N.Y. Feb. 16, 2023) (approving fee application in class action litigation where counsel expended 1,771 hours in case involving amended pleadings, motion to dismiss, discovery and mediation), *report and recommendation adopted*, Order (Mar. 10, 2023); *cf. In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-CV-8472, 2022 WL 2063864, at *22 (S.D.N.Y. June 8, 2022) (reducing requested attorney's fee by one-third in a case in which class counsel expended 4,666 hours).  And in this case, the litigation did not settle at the earliest stages.  There was motion practice, discovery, and

---

[6] Counsel certifies that these summaries were "prepared from contemporaneous, daily time records regularly prepared and maintained" by attorneys.  (Klinger Decl. ¶ 47).

extensive settlement negotiations.  (*See* Pls.' Mem. of Law at 2, 4–5, 15–16).  However, as many courts have recognized, "duplicative and unnecessary billing" is "an inherent issue in protracted litigation involving the retention of and contemporaneous work performed by multiple law firms."  *Kindle v. Dejana*, 308 F. Supp. 3d 698, 714 (E.D.N.Y. 2018) (applying a 10% across-the-board fee cut to account for duplicative efforts by multiple firms).[7]

"In reviewing a fee application, the court 'should exclude excessive, redundant or otherwise unnecessary hours.'"  *Brown*, 2014 WL 1237448, at *10 (collecting cases) (quoting *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009)); *John v. DeMaio*, No. 15-CV-6094, 2016 WL 7469862, at *8 (E.D.N.Y. Sept. 29, 2016) ("[A] trial court may reduce the claimed hours and, accordingly, counsel's award, where proposed billing schedules are unsupported by evidence or objectively unreasonable."), *report and recommendation adopted*, 2016 WL 7410656, at *4 (Dec. 22, 2016).  "Where entries on a time sheet are vague, duplicative, or otherwise insufficient, a court need not itemize individual entries as excessive; rather, it may make an across-the-board reduction, or percentage cut, in the amount of hours."  *John*, 2016 WL 7469862, at *8 (quotations omitted); *accord Brown*, 2014 WL 1237448, at *11 ("Rather than itemizing individual entries as excessive, the court may make an across-the-board reduction, or percentage cut, in the amount of hours." (quotations omitted)).  "[I]t is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent."

---

[7] Counsel argues that in seeking $600,000, they "took a voluntary 20% reduction from their combined accumulated lodestar in making their fee request, specifically to account for any possible excessive or duplicative hours."  (Pls.' Reply at 6).  This 20% reduction, however, was made from an *already inflated* lodestar of $753,879.10.

*John*, 2016 WL 7469862, at *9 (quotations omitted).  And "[a] percentage reduction is 'a practical means of trimming fat from a fee application' and is a permissible way of reducing a fee award." *Caban v. Emp. Sec. Fund of the Elec. Prods. Indus. Pension Plan*, No. 10-CV-389, 2015 WL 7454601, at *8 (E.D.N.Y. Nov. 23, 2015) (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)).

It is almost inevitable that in a case with 18 attorneys and 16 paraprofessionals, from five different firms, there will be duplicative efforts.  *See, e.g.*, *Kindle*, 308 F. Supp. 3d at 714.  In the declarations, there are multiple instances of potentially duplicative efforts.  For instance, attorneys from three firms drafted Plaintiffs' opposition to Canon's motion to dismiss.  (Feldman Decl. ¶ 3; Yanchunis Decl. ¶ 16; Berry Decl. ¶ 3).  It appears that members from every firm attended the mediation.  (Klinger Decl. ¶ 39; Feldman Decl. ¶ 3; Yanchunis Decl. ¶ 16; Berry Decl. ¶ 3).  Attorneys from two firms worked on this attorney's fee motion.  (Feldman Decl. ¶ 3; Berry Decl. ¶ 3).  The efforts and full participation of counsel in this case is appropriate and important; however, the Court nevertheless concludes that there is an element of duplicative efforts, which the Court must account for.  *See Handschu*, 727 F. Supp. 2d at 253.

The Court finds that an across-the-board cut of 15% is appropriate to account for duplicative hours.  *See, e.g.*, *Kindle*, 308 F. Supp. 3d at 710–11, 714 (imposing 10% reduction in attorney's fees to account for unnecessary and duplicative billing where three firms spent 2,285 hours on litigation); *Handschu*, 727 F. Supp. 2d at 246–47, 253 (reducing attorney's fees by 10% because of duplicative efforts where attorneys expended 685 hours).

16

The Court, therefore, recalculates the lodestar based upon adjusted hourly rates and an hours reduction.  These calculations are summarized in the chart below.

| Mason Lietz & Klinger LLP | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | **Title** | **Requested Hourly Rate** | **Reasonable Hourly Rate** | **Hours Worked** | **Adjusted Hours** | **Requested Fee** | **Recalculated Fee** |
| David K. Lietz | Partner | $919.00 | $600.00 | 16.3 | 13.855 | $14,979.70 | $8,313.00 |
| Gary M. Klinger | Partner | $850.00 | $600.00 | 59.5 | 50.575 | $50,575.00 | $30,345.00 |
| Gary Mason | Partner | $1,050.00 | $600.00 | 3.4 | 2.89 | $3,570.00 | $1,734.00 |
| Danielle Perry | Partner | $750.00 | $600.00 | 0.2 | 0.17 | $150.00 | $102.00 |
| David Beiss | Legal Fellow | $350.00 | $100.00 | 41.1 | 34.935 | $14,385.00 | $3,493.50 |
| Gio Colon | Paralegal | $170.00 | $100.00 | 0.3 | 0.255 | $51.00 | $25.50 |
| Taylor Heath | Paralegal | $225.00 | $100.00 | 6.6 | 5.61 | $1,485.00 | $561.00 |
| Sandra Martin | Paralegal | $170.00 | $100.00 | 3.6 | 3.06 | $612.00 | $306.00 |
| Morgan Beauchamp | Paralegal | $170.00 | $100.00 | 1.5 | 1.275 | $255.00 | $127.50 |
| Carol Corneilse | Client Specialist | $150.00 | $100.00 | 7.8 | 6.63 | $1,170.00 | $663.00 |

| Milberg Coleman Bryson Phillips Grossman PLLC | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | **Title** | **Requested Hourly Rate** | **Reasonable Hourly Rate** | **Hours Worked** | **Adjusted Hours** | **Requested Fee** | **Recalculated Fee** |
| David K. Lietz | Partner | $919.00 | $600.00 | 69.9 | 59.415 | $64,238.10 | $35,649.00 |
| Gary M. Klinger | Partner | $850.00 | $600.00 | 116.8 | 99.28 | $99,280.00 | $59,568.00 |
| John J. Nelson | Partner | $468.00 | $468.00 | 8.2 | 6.97 | $3,837.60 | $3,261.96 |
| Carolyn Cuneo | Associate | $829.00 | $350.00 | 0.5 | 0.425 | $414.50 | $148.75 |
| Sandra Passanisi | Paralegal | $208.00 | $100.00 | 11.1 | 9.435 | $2,308.80 | $943.50 |
| Heather Sheflin | Paralegal | $225.00 | $100.00 | 2.1 | 1.785 | $472.50 | $178.50 |
| Ashley Tyrrell | Paralegal | $208.00 | $100.00 | 3.6 | 3.06 | $748.80 | $306.00 |
| Amanda Mkamanga | Paralegal | $208.00 | $100.00 | 0.1 | 0.085 | $20.80 | $8.50 |

| George Feldman McDonald, PLLC | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | **Title** | **Requested Hourly Rate** | **Reasonable Hourly Rate** | **Hours Worked** | **Adjusted Hours** | **Requested Fee** | **Recalculated Fee** |
| Lori G. Feldman | Member | $900.00 | $600.00 | 111.6 | 94.86 | $100,440.00 | $56,916.00 |
| David J. George | Member | $900.00 | $600.00 | 20.1 | 17.085 | $18,090.00 | $10,251.00 |
| Brittany Brown Sackrin | Associate | $600.00 | $350.00 | 74.8 | 63.58 | $44,880.00 | $22,253.00 |
| Megan Lucey | Paralegal | $270.00 | $100.00 | 0.6 | 0.51 | $162.00 | $51.00 |
| Hailey George | Paralegal | $210.00 | $100.00 | 10.3 | 8.755 | $2,163.00 | $875.50 |

| Morgan & Morgan | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | **Title** | **Requested Hourly Rate** | **Reasonable Hourly Rate** | **Hours Worked** | **Adjusted Hours** | **Requested Fee** | **Recalculated Fee** |
| John Yanchunis | Lead Partner | $1,450.00 | $600.00 | 64.7 | 54.995 | $93,815.00 | $32,997.00 |
| Jean Sutton Martin | Attorney | $1,150.00 | $350.00 | 0.1 | 0.085 | $115.00 | $29.75 |
| Patrick Barthle | Attorney | $800.00 | $350.00 | 1.6 | 1.36 | $1,280.00 | $476.00 |
| Kenya Reddy | Attorney | $1,000.00 | $350.00 | 49.6 | 42.16 | $49,600.00 | $14,756.00 |
| Ryan D. Maxey | Attorney | $800.00 | $350.00 | 111.3 | 94.605 | $89,040.00 | $33,111.75 |
| Jennifer Cabezas | Paralegal | $225.00 | $100.00 | 12.8 | 10.88 | $2,880.00 | $1,088.00 |

| Arnold Law Firm | | | | | | |
|---|---|---|---|---|---|---|
| **Name** | **Title** | **Requested Hourly Rate** | **Reasonable Hourly Rate** | **Hours Worked** | **Adjusted Hours** | **Requested Fee** | **Recalculated Fee** |
| M. Anderson Berry | Partner | $850.00 | $600.00 | 65.2 | 55.4 | $55,420.00 | $33,252.00 |
| Gregory Haroutunian | Senior Associate | $725.00 | $350.00 | 33.6 | 28.6 | $24,360.00 | $9,996.00 |
| Leslie Guillon | Associate | $625.00 | $350.00 | 2.0 | 1.7 | $1,250.00 | $595.00 |
| Alex Sauerwein | Associate | $400.00 | $350.00 | 3.0 | 2.6 | $1,200.00 | $892.50 |
| Lori Martin | Paralegal | $308.00 | $100.00 | 3.9 | 3.3 | $1,201.20 | $331.50 |
| Bianca E. Marentes | Paralegal | $308.00 | $100.00 | 5.4 | 4.6 | $1,663.20 | $459.00 |
| Olya Velichko | Paralegal | $308.00 | $100.00 | 11.0 | 9.4 | $3,388.00 | $935.00 |

| | **TOTAL** | $365,000.71 |
|---|---|---|

A reasonable lodestar for this case, as calculated by the Court, is $365,000.71. "[C]ourts may use their discretion to increase the lodestar by applying a multiplier based on factors such as the riskiness of the litigation and the quality of the attorneys." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 123 n.27 (2d Cir. 2005).[8] Although the lodestar method results in a fee that is presumptively reasonable, "an unenhanced lodestar fee does not account for the contingent risk that a lawyer may assume in taking on a case." *Fresno Cnty. Emps.' Retirement Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 67–68 (2d Cir. 2019). Here, counsel took on representation of the class on a full contingency basis. (Pls.' Mem. of Law at 18; Klinger Decl. ¶ 53); *see Fresno Cnty.*, 925 F.3d at 70 ("[C]lass counsel's ability to freely represent other clients is limited by the risk [they] have assumed that the class's cause will be unsuccessful."). Furthermore, counsel faced multiple challenges and risks in prosecuting the case, chief among them was establishing standing. (Pls.' Mem. of Law at 21.) This is a risk that warrants a multiplier enhancement to the lodestar. *See Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704, 726–27 (2d Cir. 2023) (affirming district court that enhanced lodestar based on risk and difficulties in establishing antitrust standing, including tangible risk of achieving no recovery).

Counsel's requested fee of $600,000 is a 1.644 multiplier of the Court's recalculated lodestar of $365,000.71. In complex class actions such as this, "[t]ypically, courts use multipliers of 2 to 6 times the lodestar." *Carrigan v. Xerox Corp.*, No. 21-CV-

---

[8] "Under the lodestar method, the lodestar is arrived at by multiplying the hours expended by class counsel by appropriate hourly rates, and may then be adjusted by a multiplier determined at the discretion of the court, taking into consideration the contingent nature of payment, the quality of representation and the results achieved." *Parker*, 631 F. Supp. 2d at 264; *see also In re TJX Cos. Retail Sec. Breach Litig.*, 584 F. Supp. 2d 395, 408 (D. Mass. 2008).

1085, 2024 WL 1639535, at *5 (D. Conn. Apr. 16, 2024) (quoting *Solis v. OrthoNet LLC*,

No. 19-CV-4678, 2021 WL 2678651, at *4 (S.D.N.Y. June 30, 2021)).  Indeed, a

multiplier of 2 or lower would be "at the lower end of the range of multipliers awarded

by courts within the Second Circuit."  *In re Lloyd's Am. Tr. Fund Litig.*, No. 96-CV-1262,

2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002).  Thus, in this case, a 1.644

multiplier on the lodestar for a fee of $600,000 is reasonable.  *See, e.g.*, *In re BioScrip,

Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017) (approving a lodestar

multiplier of 1.39 as "at the lower range of comparable awards"), *aff'd sub nom. Fresno

Cnty.*, 925 F.3d at 73; *Pickard v. OnSite Facility Servs., LLC*, No. 22-CV-207, 2023 WL

7019256, at *11 (N.D.N.Y. Oct. 25, 2023) (approving lodestar multiplier of 1.56).  The

Court finds that a multiplier of 1.644, resulting in a fee of $600,000, is presumptively

reasonable for counsel's efforts in this case.

> b.    Reasonableness Under the *Goldberger* Factors

In a non-common fund settlement of a class, the Court still uses the *Goldberger*

factors as part of its reasonableness check for attorney's fees.  *McBean*, 233 F.R.D. at

392; *Jermyn*, 2012 WL 2505644, at *9.  As noted, these six factors are: "(1) the time and

labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the

risk of litigation[]; (4) the quality of representation; (5) the requested fee in relation to

the settlement; and (6) public policy considerations."  *Goldberger*, 209 F.3d at 50.

*First*, counsel has expended significant time and resources in representing the

Class.  They began an investigation of the data breach soon after it occurred, and after

their appointment, they filed a Consolidated Class Action Complaint, successfully

opposed Canon's motion to dismiss, and established that Plaintiffs had Article III

standing to proceed.  (Pls.' Mem. of Law at 15).  Counsel then negotiated a settlement

with Canon over a period of several weeks, including a full-day mediation.  (*Id.*).

Following settlement, counsel submitted their motions for preliminary and final

approval—including with supplemental briefing—as well as the present motion for

attorney's fees, costs, and incentive awards.  (*See* Dkt. Nos. 62, 65–66, 69, 72, 77).  This

is a substantial amount of effort on behalf of the class.

　　　*Second*, the size and difficulty of the issues in this case weigh in favor of

approving the fee.  *See Kurtz*, 2024 WL 184375, at *17 ("In evaluating the second

*Goldberger* factor, the size and difficulty of the issues in a case are significant factors to

be considered[.]" (quotations omitted)).  This litigation spanned more than four years

and began as three separate cases.  *See Canon*, 2023 WL 7936207, at *1 n.1.  The class

has approximately 42,000 members, (Klinger Decl. ¶ 57), and if the case had proceeded

to summary judgment and trial, both would have been complex and challenging.  The

issues of standing were also not straightforward (requiring legal analysis by Judge

Donnelly, *see Canon*, 2022 WL 22248656, at *3–*6), and the settlement itself required

revision based upon the Court's questions about its impact on class members.  (*See*

Minute Entry & Order dated Mar. 23, 2023; Letter dated June 20, 2023, Dkt. No. 59).

All of this speaks to a complex, rather than straightforward, class action litigation with

difficult issues.  *See, e.g.*, *Hudson's Bay*, 2022 WL 2063864, at *19 ("The magnitude and

complexity of this case are reflected in the volume of affected [members] and the

technical details of how malware breached the [defendants'] system[.]").

　　　*Third*, Plaintiffs would have faced serious risks if the case had proceeded with

litigation.  Among other things, Plaintiffs likely would have encountered obstacles to

establishing class-wide damages, particularly due to the inherent uncertainty of

quantifying injury in a data breach case.  *See, e.g.*, *Canon*, 2022 WL 22248656, at *7–*8

(discussing difficulties of establishing damages in this case and in other data breach

cases); *see also In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 17-MD-2807,

2019 WL 3773737, at *6 (N.D. Ohio Aug. 12, 2019) ("The realm of data breach litigation

is complex and largely undeveloped.  It would present the parties and the Court with

novel questions of law.").  Because no data breach class action has reached the trial

stage—*see Hudson's Bay*, 2022 WL 2063864, at *9–*10; (Pls.' Mem. of Law at 20)—the

trial risk is difficult to quantify and raises the uncertainty involved in the case, a fact that

counsels in favor of both settling the case and awarding counsel this fee for obtaining

that reasonable settlement.

    *Fourth*, counsel's skill weighs in favor of approving the $600,000 fee.  Counsel

defeated a motion to dismiss, prosecuted the case through discovery, and negotiated a

significant and reasonable settlement that provides monetary and injunctive relief to

class members.

    *Fifth*, in examining the reasonableness of the fee, the Court must examine the fee

in relation to the recovery by class members, in order to "protect the interests of the

absent class members."  *See McBean*, 233 F.R.D. at 392.  In many class action

settlements, the attorney's fees are paid from a common fund, with attorney's fees

necessarily diminishing the recovery of class members.  However, in this settlement,

Canon will pay any awarded fee separate and apart from the amounts paid to class

members.  (Pls.' Mem. of Law at 2); *see, e.g.*, *Canon*, 2023 WL 7936207, at *5 ("Unlike

in *Moses*, an award of attorney's fees would not affect the Class Members' recovery."

(citing *Moses*, 79 F.4th at 252 n.7)).  Furthermore, out of approximately 42,000 class

members, with 96.4% receiving notice, only two class members opted out and none

objected.  (Suppl. Decl. of Cameron R. Azari dated Apr. 18, 2024 ("Azari Decl."), Dkt.

No. 75-1 ¶¶ 7, 17, 21).  The structure of the settlement and the positive reaction of the class to the settlement weigh in favor of approving the fee.  *See, e.g.*, *Hudson's Bay*, 2022 WL 2063864, at *9 ("The reaction to the class has been favorable.  There have been no objections to the settlement . . . .  This factor weighs in favor of approval.").

*Sixth*, when considering whether to approve a fee award, "courts consider the social and economic value of the class action, and the need to encourage experienced and able counsel to undertake such litigation."  *Kurtz*, 2024 WL 184375, at *17 (quotations omitted).  Those considerations are present in this case and furthered by the settlement.  In addition to financial renumeration, Canon agreed to maintain enhanced data security measures for at least one year, (Settlement Agreement ¶ 2.5)—measures that would not have been undertaken in the absence of the case, (Pls.' Mem. of Law at 8); *see also Hudson's Bay*, 2022 WL 2063864, at *21 ("In addition to providing compensation to injured class members, the litigation and settlement of plaintiffs' claims incentivizes retailers to take stronger data-protection measures. . . .  Public policy weights in favor of [the] attorneys' fees award.").

Thus, for the reasons stated above, the Court finds that an award of $600,000 is reasonable under the *Goldberger* factors.

## II.   Costs

Counsel seeks reimbursement for costs totaling $17,985.58, consisting of filing fees, postage, travel and transportation, transcript fees, and online research fees. (Klinger Decl. ¶ 51; Feldman Decl. ¶ 10; Yanchunis Decl. ¶ 15; Berry Decl. ¶ 10).  Canon takes no position on this.  (Defs.' Opp'n at 1 n.1).  Ordinarily, plaintiffs may recover "[c]osts relating to filing fees, process servers, postage, and photocopying."  *Teamsters Loc. 814 Welfare Fund v. Dahill Moving & Storage Co.*, 545 F. Supp. 2d 260, 269

(E.D.N.Y. 2008).  Only those costs that are tied to "reasonable out-of-pocket expenses" that were "incidental and necessary to the representation" of the class are recoverable. *In re Facebook, Inc., IPO Secs. & Derivative Litig*., 343 F. Supp. 3d 394, 418 (S.D.N.Y. 2018) (quotations omitted).

The attorney declarations support their request for reimbursement of costs. Taking Mr. Klinger's costs as an example, the costs include $150 in filing fees, $37.85 in postage, $2,931.81 in travel, $601.93 in out-of-town meals, and $275.58 in out-of-town transportation.  (Klinger Decl. ¶ 51).  "These expenses are the type for which the paying, arms' length market reimburses attorneys.  Moreover, there were no objections to these requests." *Stinson v. City of New York*, 256 F. Supp. 3d 283, 297 (S.D.N.Y. 2017) (quotations and citation omitted); *see, e.g*., *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 316 (E.D.N.Y. 2015) (approving costs for filing fees, process servers, photocopying, and travel).

Thus, the Court finds the request for costs reasonable and appropriate and awards counsel $17,985.58 in costs.

III.   <u>Incentive Awards</u>

Finally, counsel seeks incentive awards of $1,000 for each named plaintiff, totaling $9,000.  (Pls.' Mem. of Law at 25).  Canon does not object.  (Defs.' Opp'n at 1 n.1).  Rule 23 permits incentive awards that are reasonable and promote equity between class representatives and absent class members.  *Moses*, 79 F.4th at 254–55 ("We decline to depart from Rule 23's mandate, which permits fair and appropriate incentive awards.").  The comparison between the recovery of an average class member and that of a named plaintiff "is necessary to determine whether an incentive award is so disproportionate to the recovery of an average class member, such that the incentive

award recipient . . . is being compensated inequitably." *Canon*, 2023 WL 7936207, at

*5.  Courts have typically approved incentive awards in the range of $1,000 to $20,000

per class representative.  *See Moses*, 79 F.4th at 255 n.12.

Ʌ The Court finds that an incentive award of $1,000 per Named Plaintiff is

reasonable under Rule 23.  The Named Plaintiffs participated in the litigation by sitting

for extensive interviews regarding the Data Breach and helping to prepare pleadings.

(Pls.' Mem. of Law at 25; *see* Klinger Decl. ¶ 26).  The Named Plaintiffs provided counsel

with documentation of their damages from the Data Breach and were prepared to be

deposed and go to trial.  (Pls.' Mem. of Law at 25).

Ʌ Furthermore, in comparison to the average recovery of a class member, $1,000

per Named Plaintiff is reasonable.  Class members who qualify for reimbursement for

monetary out-of-pocket losses will receive either up to $300 (under an Ordinary

Expense) or up to $7,500 (under an Extraordinary Expense).  (Pls.' Mem. of Law at 6–

7).  Even for those who do not qualify for reimbursement, all class members are eligible

for two years of free credit monitoring, the market value of which is $216 per Class

Member.  (*Id.* at 12).  And indeed, in reviewing the claim forms that have been received

by the administrator since preliminary approval, it appears that most class members

will receive free credit monitoring, 84 Class Members will receive $300 each, 662 Class

Members will receive some amount less than $300, totaling $42,800, and other Class

Members will receive reimbursement of thousands of dollars, totaling $155,220.61.

(Azari Decl. ¶ 18 & nn. 5–7; *see also* Letter dated July 19, 2024, Dkt. No. 78 at 1).  Since

most class members will receive recoveries in the range of a several hundred dollars to a

several thousand dollars, an incentive award of $1,000 for each named plaintiff for their

contributions is fair and reasonable.  *See, e.g.*, *Chavarria v. N.Y. Airport Serv., LLC*,

875 F. Supp. 2d 164, 177 (E.D.N.Y. 2012) (approving incentive award of $5,000 for class representative who aided counsel in fact-finding, located class members, and attended meetings with counsel); *Loc. 1180, Commc'ns Workers of Am. v. City of New York*, 392 F. Supp. 3d 361, 376 (S.D.N.Y. 2019) (noting that a $1,000 incentive award is "relatively modest").  The Court therefore awards each named plaintiff $1,000—totaling $9,000—in incentive awards.

CONCLUSION

For the reasons stated above, the Court grants the motion for attorney's fees, costs, and incentive awards in part with an award to Plaintiffs of:

- $600,000 in attorney's fees;

- $17,985.58 in costs; and

- $9,000 in incentive awards, to be evenly distributed among the Named Plaintiffs.


SO ORDERED.

/s/ *Sanket J. Bulsara* August 5, 2024
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

26